## H. W. FOOTE v. M. C. HAMBRICK.

1. CHANCERY PLEADING. *Inconsistent averments.* *Case.*

> A bill to foreclose a mortgage, executed by a husband and wife, alleged that, by mistake, the deed embraced land not owned by the grantors, and that the husband altered the mortgage after its delivery by inserting the land intended; and further alleged "that the whole transaction was between the complainant and the husband acting for himself and wife, except that the wife executed the papers after they were prepared." *Held*, on demurrer by the wife, in the absence of any averment of ratification, that this exception, embracing the all-important step of the transaction, negatives the main allegation as to the husband's agency in the whole transaction.

2. SAME. *Alternative and inconsistent averments.* *Case.*

> The bill further alleged "that the defendant was either informed by her husband of the mistake, and its correction by him, and acquiesced therein, or she never had any information that any mistake had been made," etc. *Held*, that this alternative averment, which must be taken as true on demurrer, excludes all idea of acquiescence in the alteration, since she could not acquiesce in that of which she had no knowledge.

3. ALTERATION OF DEED. *Intent to correct mistake.*

> The alteration by the mortgagee of the description of land in a mortgage, without the consent of the mortgagor, will not render the mortgage void, if done without any fraudulent intent, but only in the honest effort to correct a mistake, and conform it to the true intent. *McRaven* v. *Crisler*, 53 Miss., 542.

4. UNAUTHORIZED ALTERATION. *Mistake.* *Description.*

> Where a husband, having jointly with his wife, executed a mortgage intended to include their homestead, and afterwards, without authority from her, but, in an honest effort to correct a mistake, inserted the homestead which had been omitted from the description, the mortgage, though not rendered invalid as to the other lands, is inoperative as to the homestead. As to this, the deed is not her act.

FROM the chancery court of Noxubee county.
HON. T. B. GRAHAM, Chancellor.

Bill in chancery to foreclose a trust-deed. The facts are stated in the opinion. It may be added that the bill, while alleging a mistake in the description of the land intended to be embraced in the trust-deed, contains no prayer for a reformation thereof, or for general relief.

*Rives & Rives*, for appellant.

The tendency of courts now is to uphold and enforce contracts of all kinds according to the intention of the parties. Liberality has taken the place of strictness. *Collins* v. *Collins*, 51 Miss., 311.

Even if the alteration were unauthorized or contrary to the original agreement, it would not render the whole mortgage void, since it was not fraudulently made, but in good faith. *Collins* v. *Collins, supra; Vanhorn* v. *Bell,* 79 Am. Dec., 506. The case is governed by *McRaven* v. *Crisler,* 53 Miss., 542.

This mortgage, having been executed since the code of 1880 removed all disabilities of coverture, it is subject to be corrected so as to evidence the true intent of Mrs. Hambrick. Equity can correct the instrument, and the parties can do that which equity will compel to be done.

The correction must be construed as her act, in view of the allegations of the bill. *Ross* v. *Baldwin,* 65 Miss., 575.

*H. W. Foote*, appellant, *pro se*, on the same side.

A ratification may be by parol, and may be implied. It is a question of fact. 7 Yer. (Tenn.), 410; 58 Ill., 19; 19 Johns., 391; 10 Am. Dec., 239; 35 Ark., 147; 123 Mass., 297; 40 Mich., 348; 9 Smed. & M., 375.

An alteration, honestly made, to correct a mistake will not avoid an instrument. *McRaven* v. *Crisler*, 53 Miss., 542. See 14 Am. Rep., 766, and cases cited. At most, it could only be void as to the part altered. 51 Miss., 311.

Parties who have consented to an alteration, or ratified it, cannot withdraw from such consent or ratification. 33 Ark., 225.

*A. C. Fant,* for appellee.

The alteration of the mortgage without the consent of Mrs. Hambrick annulled it. Bishop, Contr., § 746; 5 Lawson, R., R. & P., § 2474; 1 Jones, Mortgages, § 94; 7 Am. & Eng. Enc. L., 502, 509; *Everman* v. *Robb,* 52 Miss., 653. *McRaven* v. *Crisler* is contrary to these authorities, and should not be followed.

*A. C. Bogle,* on the same side.

The bill does not seek reformation of the trust-deed, nor does it pray for general relief. It must therefore be considered as a mere bill to enforce the trust-deed as altered.

It is well settled that the holder of any instrument, who, without consent of the maker, materially alters it to his advantage, cannot enforce it. It is no answer to this to say that courts of equity can reform the instrument. Courts are organized to do such things, and the policy of the law is that only the courts shall do them.

The bill does not show that the wife promised to include the homestead, or supposed it was included at the time she executed the trust-deed. The general allegation that all parties intended to include the homestead, is destroyed by the specific averment that the whole transaction was with the husband, and all the wife had to do with it was to execute the papers.

The good faith of the party making the alteration does not alter the case. It is a question of public policy, not intent.

It cannot be said that appellee ever acquiesced in the alteration, since the bill avers that she never knew of it. *McRaven* v. *Crisler* is not decisive of this case. In that case the alteration was of a note, and in a matter not material to the note. See *Bridges* v. *Winters,* 42 Miss., 135. The case is entirely different where deeds to land are altered, especially when the homestead is inserted. As to that, a conveyance can have no effect without the signature and acknowledgment of the wife.

*T. W. Brame*, on the same side.

That a material alteration of a note, without the maker's consent, discharges him, was decided in *Oakey* v. *Wilcox*, 3 How., 330. This case has never been overruled. *Bridges* v. *Winters* and *McRaven* v. *Crisler* are not in point. They were cases of simple notes, and the alterations were not in essential matters. So of the case of *Collins* v. *Collins*. The doctrine of these cases cannot extend to conveyances of land, where the alteration is material.

The wife is not bound by the unauthorized act of the husband in making the alteration. 1 Jones on Mort., 94; 5 Lans., 365.

This is not a bill for reformation, but a suit on the altered instrument. In any view of the case, the mortgage is void as to the homestead. That can be transmitted only in the manner provided by the statute.

Argued orally by *J. E. Rives*, for appellant, and *A. C. Bogle* and *T. W. Brame*, for appellee.

Woods, J., delivered the opinion of the court.

The material facts shown by the appellant's original bill, and admitted by the demurrer of the appellee, are these, viz.: The appellee and her husband, J. T. L. Hambrick, being indebted to appellant in the sum of $6,973.95, agreed to give him their note for that amount, and to secure the payment thereof by a trust-deed in his favor on certain lands in Noxubee county, including the north-east one-fourth and thirty acres off the east side of the north-west one-fourth of section 17, township 16, range 19; and they accordingly made and delivered to appellant their promissory note for said sum, due December 1, 1891, executing, at the same time, to Thomas Foote, as trustee, their deed of trust, to secure the payment of the said note, intending to include in the trust-deed the land, and only the land, fully and particularly set out and described in the bill, in which is included the said north-

east one-fourth and the thirty acres in the north-west one-fourth of said section 17; but that, by mistake in drafting the trust-deed, the *south*-east one-fourth, and thirty acres off the east side of the *south*-west one-fourth, of said section 17 were inserted, instead of the north-east one-fourth, and thirty acres off the east side of the north-west one-fourth of said section as was intended. Neither the appellee nor her husband owned any land in the south-east one-fourth or the south-west one-fourth of said section 17; but appellee did, at that time, own the north-east one-fourth, and thirty acres off the east side of the north-west one-fourth, of said section, and these lands in the north-east one-fourth and the north-west one-fourth were intended by all the parties at the time to be included in said trust-deed, together with the other lands described in the bill, and correctly embraced and set out in the deed, and appellee understood that all of the lands described in the bill of complaint were included in the trust-deed. Some time after the execution of the trust-deed, complainant and the husband of appellee, one of the makers of the note and trust-deed, had a conference touching the matter, and he agreed to the correction of the trust-deed, and the said husband of appellee took the deed, and, in the presence of complainant, erased the letter "S," in "S. E. one-fourth" of section 17, and wrote the letter "N" in place of the erased letter "S," and did the same with the letter "S" in the "S. W. one-fourth" of section 17, so that said deed then, as it was first intended it should, embraced all the lands described in the bill filed herein, and said trust-deed was itself filed as an exhibit to the bill. The said northeast one-fourth, and the thirty acres off the east side of the north-west one-fourth, of section 17 embraced the homestead of said appellee and her said husband, and the appellee was either informed by her husband of the mistake which had been made, and of its correction by him, as set out and shown in the bill, and acquiesced therein, or she never had any information that any mistake had been made, but supposed all

the time that the trust-deed included and described the said north-east one-fourth, and the thirty acres in the north-west one-fourth, of said section 17, the land which she really owned, and which embraced her homestead; and appellee, as late as December 3, 1891, in a letter written to appellant, admitted that the deed embraced her homestead, and that appellant could lawfully proceed to have the same sold. The whole of said promissory note, principal and interest, remains due and unpaid, and appellee refuses to pay the same, or any part thereof, and Thomas Foote, the trustee, and J. T. L. Hambrick, appellee's husband, are now dead.

The prayer of the bill is for a decree of the court for a sale of all, or of a sufficiency of the lands embraced in the trust-deed, as corrected, for the satisfaction of the appellant's debt.

To this bill appellee interposed her demurrer, assigning, among other causes, as the second ground, that the alteration of the trust-deed, as averred and set out in the bill, rendered the same void, and destroyed all rights which appellant had thereunder. The demurrer was by the court below sustained, and the bill dismissed, the appellant declining to amend; and from this action an appeal is taken.

Before proceeding to consider the proposition thus presented, it is necessary for us to dispose of two contentions, relied upon by counsel for appellant as conclusive of the controversy, and as obviating any requirement on our part to determine the legal question raised by the second ground of demurrer.

1. It is said for appellant that it sufficiently appears from the statements of the bill that J. T. L. Hambrick, the husband of appellee, was the agent of his wife in this entire transaction, and was authorized to make such alteration and correction of the trust-deed. This contention rests upon an erroneous view of the meaning and effect of the averment of the bill, "that the whole transaction was between complainant [appellant] and said J. T. L. Hambrick, acting for himself and his wife, except that defendant [appellee] executed the

papers after they were prepared," etc.   The exception utterly
negatives all thought that Hambrick had any sort of agency
from the wife when the final step in the negotiations had
been reached, and the consummation of the agreement arrived
at by the negotiations was to be executed.   When the final
and all-important act of making the conveyance contem-
plated by appellant and J. T. L. Hambrick in their prelimi-
nary negotiations was to be performed, the appellee appeared
in person and executed the deed.   In this act there was no
agency, for she represented herself and acted for herself.
That there was ever any subsequent authorization of the
husband, in any respect, is not averred in the bill.

2. It is insisted further, however, by counsel for appellant,
that the bill shows acquiescence—that is, assent—subsequent,
on appellee's part, to the alteration and correction of the
deed made by her husband.   This contention rests upon the
averment of the bill, "that said defendant [appellee] was
either informed by her husband of the mistake that had been
made, and that had been corrected by him as aforesaid, and
acquiesced in said correction, or she never had any informa-
tion that any mistake had been made, but supposed all the
time that the said deed of trust embraced and included said
N. E. ¼ and 30 acres off the east side of the N. W. ¼ of
said section 17," etc.; and upon another averment of the
bill, to wit; "that as late as December 3, 1891, said defend-
ant in a letter to complainant admitted that said deed of
trust embraced her homestead, and that complainant could
lawfully proceed to have it sold."

If the first averment, to the effect that appellee was in-
formed by her husband of the correction and alteration of
the deed, and acquiesced therein, had gone no further, and had
not been burdened with its alternative statement—which ap-
pellee is entitled to take as true against him—to the effect
that appellee never knew of the alteration and correction
made by her husband, there would be ground for the conten-
tion.   But the alternative averment that appellee never

knew of the alteration, but always supposed the N. E. ¼ and the 30 acres in the N. W. ¼ were embraced in the deed, is so palbably in conflict with the idea of consent to alteration on her part as to leave no place for controversy.   It is vain to try to imagine consent to that of which the supposed consenting party has no knowledge.   Nor is this contention given any support by the other averment of the bill, on which reliance is placed by appellant's counsel, to the effect that in her letter of December 3, 1891, appellee admitted that the deed embraced her homestead, and that appellant could lawfully proceed to have it sold.   This averment is altogether consistent with the alternative statement contained in the former averment which we have examined.   If appellee supposed, all the time, that her homestead was embraced in the deed as originally drawn, the letter is but the reasonable expression of her understanding of the extent of the incumbrance upon her estate, and of the rights of appellant under such incumbrance.   But,. that acquiescence—consent of appellee to the correction and alteration—is predicable of any thing, or every thing, said to have been admitted in her letter, is not maintainable.

We now come to the examination and determination of the chief question made by the record before us, and which is, fairly stated: Does the alteration of the trust-deed, in a material matter, by one of. the grantors, after its execution and delivery, and while in the custody of the beneficiary, and with his privity, without the knowledge and consent of the other grantor, whereby an advantage is conferred upon the beneficiary, render the deed absolutely void, though the alteration was made in good faith, in an honest effort to correct a mistake, and to conform the instrument to the real intention of all the parties at the time of its execution?

The courts in England and the United States which have answered this question affirmatively, holding that any alteration of a deed, bond, bill or note, when made by the voluntary act of the creditor, to his advantage, and whereby the

responsibility of the debtor bound is enlarged or injuriously affected, no matter what the motive with which the alteration is made, destroys the instrument altered, declare that the principle or rule is founded, (1) in public policy, to protect debtors who have, in writing, bound themselves in a particular manner, and for a certain object, from acts hurtful to them and hard to be guarded against, and done in their absence and without their consent, it being thought that to permit such alterations would destroy the value of written contracts by opening the door to endless frauds and perjuries; and (2) for the reason that no man shall be permitted to take the chance of committing a fraud without running any risk of losing by the event when it is detected.

It is impossible to yield the assent of the mind to the first ground on which the rule is supposed to be founded, for to do so would be, in effect, to say that no written instrument shall ever be made to correspond to and effectuate the real contract between the parties by extrinsic evidence; that the naked letter of the written contract, though mistakenly drawn, shall not be shown by any parol proof not to embody the true agreement between the parties. To refuse to listen to parol evidence, to ascertain whether the written instrument embodied the agreement of the parties, or through mistake, wilfully or inadvertently made, failed to do so, would indeed shut the door against the possibility of fraud and perjury by one of the parties, but it would at the same time open it wide to fraud and knavery on the other side. The proper protection of debtors who have bound themselves in writing, will be best secured, not by absolving them from obligations which they have assumed, or continuing them in properties which they have agreed to part with for valuable considerations, but by ascertaining what is the truth, and compelling observance of that by all parties.

The second reason advanced in support of the rule appears to us equally unsound, for it assumes that any alteration of an instrument, under any circumstances, is fraudulent. But

to talk of "permitting a man to take the chance of committing a fraud, without running any risk of losing by the event when it is detected," in a clear case of an alteration, even in a material part of the instrument, made in good faith to carry out the admitted intention of the parties, though done under a mistake as to the propriety or efficacy of such act, is a perversion of terms, and an abandonment of the proposition under consideration.  Of course, if, to secure an advantage, a fraud is committed whereby the responsibility of the person sought to be charged is increased, the instrument will be avoided, for fraud vitiates every thing tainted by it.  Even this wholesome rule sometimes operates hardly; but to extend the doctrine, and deny access to the courts to those who have innocently and honestly sought, erroneously, to correct a confessed mistake in the written instrument, would be harsh and inequitable, indeed.  The public welfare requires the infliction of punishments for crimes; and, for offenses against individual rights, conceived in knavery and brought forth in fraud, the transgressor is made to realize the hardness of his way, by a refusal of the law to yield him any aid in attempting to take any thing under his fraud-infected instrument; but we cannot bring ourselves to consent that an honest mistake made by a party to a contract to conform the instrument to the real agreement, in order to carry out the true intention of all the parties, should utterly destroy the validity of the writing, and so visit upon the innocent, though mistaken, party to the attempt at conformation, the confiscation of all the property or estate involved, and that, not for the benefit of the state, but for the other party to the contract—a person whose real agreement and intention originally was to be bound exactly as the offending party innocently, but mistakenly, sought to show he was bound by making the writing speak the real truth.

When we come, too, to carefully examine the authorities holding to this harsh and unjust rule, we shall find in their inharmonious and inconsistent utterances that, while pro-

fessing adherence to the principle, the application of it is constantly avoided by endless exceptions and limitations. The sturdy adherence of courts in England and America to the rule in theory is in bewildering contrast with the practical nullification of it in concrete application to innocent but mistaken offenders, by the same courts.

This rule, as announced in *Pigot's Case*, 11 Coke, is as follows: "When any deed is altered in a point material, by the plaintiff himself or by any stranger, without the privity of the obligee, be it by interlineation, addition, rasing, or by drawing of a pen through a line or through the middle of any material word, that the deed thereby becomes void." And while the long subsequent English cases, as well as the American cases which follow, and are founded upon the authority of this ruling by Coke, all point to *Pigot's Case* as the source of their inspiration, that half of the ruling relating to alterations made by strangers is not now given credit by any court in the United States, and, as to the other half of the rule relating to alterations by the obligee, the courts of both countries are industrious to, and successful in, finding some exception or modification or limitation by which to save the unwary who have, mistakenly, but not fraudulently, undertaken to correct admitted mistakes in the contract as originally drawn.

In *Kershaw* v. *Cox*, 3 Espinasse, 246, suit was brought on a bill of exchange, drawn by Collier & Son in favor of Cox, the defendant in the suit, and indorsed by Cox and delivered to Kershaw, son of one of the plaintiffs, and he, being indebted to plaintiffs, remitted the bill to them in payment of his debt. The day following, the bill was sent back by plaintiffs, on discovering that the words "or order" were wanting, so that it could not be negotiated by indorsement. On receiving it back, Kershaw, the son, applied to the defendant and indorser, who referred him to Collier, the drawer, who inserted the words "or order," giving negotiability to the bill. On trial it was contended for

defendant that, without defendant's consent, there had been a material alteration by the insertion of the words "or order;" but the contention was disallowed, Mr. Justice LeBlanc intimating an implied assent to the alteration by defendant, and expressly saying that the alteration was not in a material part. And yet, in the later case of *Knill* v. *Williams*, 10 East, 453, which was a suit on a promissory note, originally expressed to be "for value received," but altered the next day, not in pursuance of the original intention of the parties, by consent, by adding the words "for the good will of the lease and trade of Mr. F. Knill, deceased," Mr. Justice Le-Blanc strangely enough says, in response to suggestion of counsel that this case fell within the rule as applied in *Kershaw* v. *Cox:* "The opinion which I delivered in *Kershaw* v. *Cox* can only be supported on the ground that the alteration, then made in the bill the day after it was negotiated, was merely the correction of a mistake made by the drawer of it, in having omitted the words ' or order,' which it was intended, at the time, should be inserted ; *for the alteration there made was a very material one."* When *Kershaw* v. *Cox* was on trial, the alteration was *immaterial*, and did not avoid the bill. In the subsequent case of *Knill* v. *Williams*, after Kershaw had been safely delivered from the pit digged by the lord chief justice in *Pigot's Case*, the alteration appeared, to the same judge, *very material.* The court held to the rule in the abstract, but refused its application in the concrete.

In *Brutt* v. *Picard*, 1 Ryan & Moody, 37, which was a suit by the indorsee against the acceptor of a bill of exchange, Abbott, Lord C. J., said : " I shall leave it to the jury to decide whether this bill was not dated by mistake 1822. If they are of opinion that it was originally the intention of the parties to the bill that it should have been dated 1823, and that the figure 2 was inserted by mistake, I am of opinion that this alteration will not vacate the bill." In this case, though the alteration was in a material point, the date of the bill, yet the striking out of 2 and the inserting of 3 to make it con-

form to the original intention of the parties, was held not to render void the bill. The correction of a mistake by a third person, to whom the bill was simply intrusted for delivery to the indorsee, was held not vitiate, whereby Brutt was saved the wretched consequences that would have followed the adherence of the court in the concrete to the rule in *Pigot's Case.* In view of these applications of the rule in England, we may well join Lord Abinger in saying, in his opinion in *Hutchins* v. *Scott,* 2 M. & W., 809: "The old law was, no doubt, much more strict than it has been in modern times."

In many of the American cases professing to stand by that part of the inequitable old rule which renders void an instrument altered, without regard to the motives of the person making the alteration, we find like evidence of the practical abandonment of the doctrine, in cases of mere mistake—where fraud cannot be affirmed. In support of this remark, and to avoid the undue extension of this opinion by protracted examination in detail, we quote from Parsons on Notes and Bills, vol. 2, pp. 568, 569: "Words which the law would annul or supply may be added to a note or bill, and constitute no material alteration; for it would be unworthy of the wisdom of the law to decide that an incautious interlineation of a word, which the same law would necessarily imply, should defeat the contract. . . . *Mistakes* in a note or bill may be corrected, and the alteration will not vitiate; the principle and reason being quite analogous to those stated in the preceding paragraph. The insertion of words or figures which have been left out by mistake is no defense."

It must be conceded, however, nearly all text-writers, and the majority of the courts of last resort in the United States, yet assert the correctness, in a general way, of the harsh rule we have been considering. But we find excellent authority for the juster and more equitable rule, which we have foreshadowed—that an alteration innocently made, without improper motive, to conform the instrument to the intention of the parties at the time of its execution will not avoid it. In

*Bowers* v. *Jewell*, 2 N. H., 543, the court says: "Although, then, it may not be too vigorous to hold that any alteration affecting the evidence to be offered on trial is material, yet it is reasonable and just to permit a party to show that the alteration was by consent of those interested, was by accident, or under circumstances rebutting every presumption of improper motives. . . . So, the intent must be fraudulent; or, in other words, the act done with an eye to gaining an advantage." And in the very recent case of *Croswell* v. *Labree*, 81 Me., 44, it is said by the court: "The defense at the trial was an alleged unauthorized alteration of the note by inserting in it the words 'or bearer.' The judge at the trial ruled that if the alteration, though unauthorized, was innocently made, without any fraudulent or improper motive, it would not avoid the note. That was correct, and is well borne out by the principle established in *Milberry* v. *Storer*, 75 Me., 89. . . . The alteration in the present instance was a material one. It undertook to foist a contract on the maker not made by him. It changed the obligation as an instrument of evidence." And to the like effect are other causes determined in the supreme court of Maine, beginning as early as 1839, in 3 Shepley, 357.

In *Russell* v. *Reed*, 36 Minn., 376, we find this satisfactory statement of the rule of law: "But the unauthorized and material alteration of a mortgage by the mortgagee, or with his privity, after execution, unexplained, is presumptively fraudulent, and vitiates the contract."

The like enlightened ruling was made by the supreme court of Massachusetts, in the case of *Adams* v. *Frye*, 3 Met., 103. Said Dewey, J., in delivering the opinion of the court: "The court are of opinion that the rule of law applicable to the case before us may be properly stated as follows: (1) That if the obligee of an unattested bond, after the execution and delivery thereof, shall, without the knowledge and assent of the obligor, fraudulently, and with a view to gain some improper advantage thereby, procure a person who was not

present at the execution of the bond, to sign his name as an attesting witness, such act will avoid the bond and discharge the obligor from all liability on the same; (2) that the act of the obligee in procuring the signature of one as a witness who was not present at its execution, and not duly authorized to attest it, will, if unexplained, be *prima facie* sufficient to authorize the jury to infer the fraudulent intent; but that it is competent for such obligee to rebut such inference, and, if the act be shown to have been done without any fraudulent purpose, the bond will not be avoided by such alteration."

In harmony with this general view is the opinion of the court in *Vogle* v. *Ripper*, 34 Ill., 100.

Without pursuing the examination further, it remains to be said that the modern and liberal rule has been adopted in this state, in the case of *McRaven* v. *Crisler*, 53 Miss., in language so forcible and unambiguous as to forever put an end to controversy in our midst. It was well said by Chalmers, J., in that case: "But, even if it be deemed a material alteration, we think it is equally clear that it did not vitiate the note. It was but the correction of a mistake, so as to conform the note to the intention of both the parties to it, and it was made in such manner as clearly to negative any fraud upon the part of the payee, or any intention to obtain an advantage. That under these circumstances alterations in notes will not vitiate them, we think is well settled."

An exhaustive examination of this question, with careful and protracted consideration of the subject as again presented in the case at bar, confirms us in the wisdom and justice of the former opinion of this court in the case just cited, and we decline to depart from it.

In response to the suggestion of counsel, we have only to add that the rule is applicable to alterations in deeds, bonds, notes and bills alike. There is no contrariety of opinion on this point in all the numerous authorities examined by us. Indeed, it is held that there is greater reason for the rule in

cases of notes than in those of deeds, because of their nego-
tiability and the consequent increase of danger from altera-
tions.

The act of alteration in the case before us, it is hardly nec-
essary to say, is nugatory and inoperative, whereby the lands
constituting the homestead were inserted. As to these, the
deed is not the act of appellee. But for that unauthorized
act, the deed, as to all the other lands, is held by us not to
be avoided, and that the demurrer should have been over-
ruled.

*Decree reversed, demurrer overruled and leave to answer given
within thirty days after mandate filed.*