## FRAZER *v.* STATE BANK OF DECATUR.

### Opinion delivered November 27, 1911.

1.  BILLS AND NOTES—RENEWAL—EFFECT OF MISTAKE.—Where there was a delivery of a written instrument intended as a renewal of a former contract, but it is accepted under a mistake as to its provisions, as where plaintiff's agent accepted the note of a corporation when he called for and thought he was accepting the corporation's note indorsed by its directors, the acceptance was made under such a mistake of fact as would justify a rescission of the contract of renewal. (Page 139.)

2.  SAME—RESCISSION FOR MISTAKE.—Though a contract may not be reformed on account of a mistake of one only of the parties, it may be rescinded for a unilateral mistake, upon the ground that there was no meeting of the minds of the parties. (Page 140.)

3.  ESTOPPEL—DOES NOT ARISE WHEN.—A party is not estopped to insist upon a rescission of a contract entered into by mistake on its part if the status of the other parties has not changed to their disadvantage. (Page 141.)

4. EVIDENCE—VARYING WRITTEN CONTRACT—PROOF OF MISTAKE.—The rule which forbids varying or contradicting the terms of a written instrument by parol evidence is not violated by admitting parol evidence to show that by reason of a mistake there was no meeting of minds.   (Page 141.)

5. ALTERATION OF INSTRUMENT—MATERIALITY.—An alteration of an instrument made by one of the obligors before delivery to the obligee for the purpose of expressing the real intention of the parties does not avoid the contract.   (Page 142.)

6. SAME—NOTICE.—Where, after a note was signed by all the directors of a bank, including the secretary, but before its delivery to the payee, the secretary added the abbreviation "Sec." to his name so as to show that he had signed for the purpose of attesting the signature of the corporation, the mere fact that this abbreviation was in different ink does not carry notice of an alteration to one who afterwards accepted it, nor affect the liability of the other indorsers or makers.   (Page 142.)

Appeal from Washington Circuit Court; *Joseph S. Maples,* Judge; affirmed.

*Rice & Dickson,* for appellant

1.   When F. A. Sanders, after the note of November 25, 1907, was signed, changed it without the knowledge and consent of appellants by writing after his name the word "Sec.," this was a material alteration to the injury of appellants, being in effect a forgery, and not binding upon them; and the court erred in ignoring this defense in its instructions.   4 Pac. 1022; 17 Am. Rep. 92; Joyce, Def. to Com. Paper, § 138; 2 Cyc. 151-154.

2.   The transaction accepting the $2,400 note, cancelling, marking paid and delivering up the old notes, was an accord and satisfaction.   6 Am. & Eng. Ann. Cas., 564-565. And the circuit court had no jurisdiction to set it aside under the pleadings.

3.   Appellee is estopped to say that it did not examine the character of the new note, and did not know what it was. 20 Am. & Eng. Enc. of L., (2 ed.) 831; 13 Cyc. 577; Pomeroy's Eq. Jur. vol. 2, § 843; *Id.,* p. 809; 5 S. W. 431; 78 Ark. 177; Bigelow on Estoppel, (2 ed.) 478; 80 Ark.  407; 144 S. W. 264; 94 Ark. 130; 16 Cyc 732, 741, 709.

*McGill & Lindsey,* for appellee.

1.   There was no consideration for the exchange of the new note for the old ones, because the payment of the interest

on the old notes was but the performance of an existing obligation. When the error or fraud was discovered, no duty was imposed on the bank but to offer to return the new note, which was the only new consideration received. The appellee has the right at law to treat the transaction as void, return or offer to return the new note and recover the old notes. 147 Mass. 335, 9 Am. St. 708; 24 Am. & Eng. Enc. of L., (2 ed.) 64; 66 Mich. 568, 11 Am. St., 531; Bishop on Contracts, § 313; 35 Ark., 483. This is not an action for reformation, hence it is not necessary to show a mutual mistake; but even in chancery, where there is mistake only on one side with fraud, concealment or inequitable conduct on the other, the courts frequently reform, and enforce as reformed, a contract. 77 Ark. 41; 2 Pomeroy, Eq. § 847.

2. There was no reason why the cause should have been transferred to equity, the remedy at law being full and adequate. 6 Pomeroy, Eq. § 685; Kirby's Digest, § 5594-5.

3. Before the bank could be affected by any alteration in the signature of the secretary complained of by appellant, it would have to be an alteration that was material and ordinarily observable. 48 Ark. 426.

MCCULLOCH, C. J. The plaintiff, State Bank of Decatur (a domestic corporation engaged in the banking business), instituted this action in the circuit court of Benton County against the Sanders Fruit & Manufacturing Company (another domestic corporation) and certain of its directors, to recover the amount of two promissory notes, each for $1,000, with interest, executed by said defendants to plaintiff, which said notes are alleged to have been surrendered to defendants by plaintiff through mistake. It appears from the record that separate actions were first instituted, but during the pendency of the cases the pleadings were lost, and a complaint was substituted covering both actions and treating them as consolidated. No question, however, is made upon this point. A trial before a jury resulted in a verdict in favor of plaintiff against the defendants who were found to have signed the notes, and the latter have appealed to this court.

It appears from the evidence that in September, 1907, defendant Sanders Fruit & Manufacturing Company borrowed the sum of $1,000 from plaintiff bank and executed its note

therefor.   Payments have been made from time to time, which
reduced the amount due on the note to the sum of $400.   On
November 25, 1907, the Sanders Company borrowed from the
bank $1,000, and executed its note therefor with certain of its
directors, who are defendants in this action, as joint makers or
indorsers, and on January 3, 1908, the Sanders Company bor-
rowed the further sum of $1,000 from the bank and executed
its note with defendant Frazier, who was one of the directors,
as joint maker or indorser.   About June 1, 1910, after these
notes became due and were unpaid  negotiations began between
the parties for a renewal thereof, and the evidence tends to show
that the cashier of the bank proposed to the defendants, by writ-
ten correspondence and verbally, that a renewal would be ac-
cepted in the form of a new note signed by the Sanders Com-
pany and indorsed by the directors, or some of them, for the
full amount of the three notes, the accrued interest to be paid
at the time of the renewal.   The cashier of the bank sent to
the defendants by mail a form of note to be executed reading,
"We, or either of us, promise to pay," etc.   The directors of
the Sanders Company, pursuant to the negotiations, held a
meeting and, after erasing the words, "or either of us," and in-
serting in lieu thereof, "as directors," executed the note for the
Saunders Company and signed it in their official capacities as
directors so as to make only the corporation liable on the note.
One of these directors, the defendant Frazier, carried the note
to the bank, together with a check for the accrued interest, and
delivered the same to the cashier, saying, as the testimony tends
to show, "Here is the note," and asked for the old notes, which
were then surrendered to him by the cashier.   The cashier
testified that the transaction was very hurriedly done on account
of Frazier having to leave in a few minutes to catch a train,
and that he (witness) did not take time to examine the note
carefully, but glanced at it, and saw that the names of the
directors were signed, and, believing that the names were
signed so as to bind them as indorsers or joint makers, he
accepted the new note, and surrendered the old ones, and did
not discover the mistake until some time thereafter.   This
occurred on June 17, 1910, and the alleged mistake was discov-
ered by the cashier on July 8, 1910, when he wrote to the San-
ders Company and each of the directors calling their attention

to the fact that the renewal note as signed did not make them liable, and that a new note must be executed.   The evidence adduced on the part of the defendant tended to show that they did not, in signing any of the notes. really intend to make themselves liable individually, but there is no testimony tending to show that their intention was ever communicated to the bank.   The court, over the objection of the defendants, gave the following instruction:

"No. 3.   The court charges you that if you find from the evidence that plaintiff held the notes sued on and offered to defendants to surrender the same for a new note to be signed by the defendant company and its directors, or some of them, and sent the defendants a note filled out to be executed and returned, and that defendants so changed the note and executed in form so that it was only the note of the defendant company, and presented the same to the plaintiff, without calling plaintiff's attention to the changes, and that plaintiff, without observing or knowing that the note was signed only as the note of the company, surrendered the old notes, then such surrender of the old notes and acceptance of the new would not bind the plaintiff, and the title in the old notes and the right to recover thereon would remain in the plaintiff, and the new note would be void. If you find the foregoing facts by a preponderance of the evidence, you will find for the plaintiff."

The point of the objection to this instruction is that it declares as a matter of law that Frazier's omission when he presented the note to call the attention of the cashier to the changes in the note, and the different method of signing it from what had been called for, constituted a fraudulent misrepresentation which would avoid the acceptance of it by the bank; and that it permitted the jury to find for the plaintiff, even though the cashier was guilty of negligence in failing to examine the paper before he accepted it.

While the question is not free from doubt, we are of the opinion that neither of these objections is well taken, for, if the facts recited in the instruction were found by the jury to exist with reference to the acceptance of the note, then the bank was not bound by its acceptance, and had a right to rescind the contract and reclaim the surrendered notes.   In other words, if the acceptance of the new note was made under cir-

cumstances recited in the instruction, the acceptance was made upon such a mistake of fact as would justify a rescission of the contract of renewal.

The following statement of the law taken from a decision of the Massachusetts court seems to be the one which should control in this case:

"It is a general rule that where parties assume to contract and there is a mistake as to the existence or identity of the subject-matter, there is no contract, because of the want of mutual assent necessary to create one; for in the case of a contract for the sale of personal property, if there is such a mistake and the thing delivered is not the thing sold, the purchaser may refuse to receive it or, if he receives it, may, upon discovery of the mistake, return it and recover back the price which he has paid." *Hecht* v. *Batchelor*, 147 Mass. 335. To the same effect see, *Bridgewater Iron Co.* v. *Enterprise Ins. Co.*, 134 Mass. 433; *Gardner* v. *Lane*, 12 Allen (Mass.) 39; *Sherwood* v. *Walker*, 66 Mich. 568; *McKinnon* v. *Vollmar*, 75 Wis. 82, 6 L. R. A 121; 1 Page on Contracts § 74; Mechem on Sales, § § 272 and 842.

The principle is announced by the above authorities in cases of sale of chattels, but we perceive no reason why it should not be controlling in a case like this, where there is a delivery of a written instrument intended as a renewal of a former contract, and where it is accepted under a mistake as to its identity. It is clearly a case of mistake as to identity, if the facts are found to exist as recited in the instruction, for the cashier accepted under a mistake the note of the Sanders Company when he had called for and thought he was accepting the note of that company bearing the individual indorsement of the directors. The mistake therefore clearly involved the question of identity of the instrument accepted.

The argument of learned counsel for defendant is based upon a misconception as to the difference between reformation and rescission of a written contract on account of mistake of one of the parties. The difference is a very distinct one, for the reformation of a contract involves an effort to enforce it as reformed, whereas rescission involves an effort to abandon and recede from a contract which the party did not intend to make. One of the parties to a contract can not have it reformed on

account of mistake which is not mutual, for to do so would be to enforce the reformed contract which the other party had not intended to make.   But a different question is presented where one of the parties to a contract seeks to have it rescinded because of a mistake on his part, for that makes only a case of there being no contract between the parties on account of the fact that there has not been a meeting of the minds of the contracting parties.   Nor does this violate the rule of evidence which forbids varying or contradicting the terms of a written instrument.   The instrument did not become the evidence of the contract between the parties until it was accepted; and if it was accepted by a mistake as to its contents, it constituted a mistake as to the identity of the subject-matter, as much as if it had been the delivery of any article sold and purchased. The decisions of this court in *McIlroy* v. *Buckner*, 35 Ark. 555, *Colonial & U. S. Mortgage Co.* v. *Jeter*, 71 Ark. 185, and other decisions of like import, holding that a party who signs a contract without reading it when he has an opportunity to do so can not plead such ignorance in avoidance, have no application to the question now before us, for, when a written instrument is signed by the parties, it becomes the sole evidence of the contract between them, and can not be varied or contradicted by parol testimony nor reformed save upon clear and satisfactory evidence of a mutual mistake as to its contents. In the present case that question is not involved, because no rights are asserted under this contract, the instrument was not one to be signed by the accepting party, and it did not become the sole evidence of the transaction between the parties.

The question of negligence on the part of the cashier in accepting the new note and surrendering the old one without examining the former is not involved in this case, for the reason that there is no evidence to the effect that the makers or indorsers of the old notes were injured thereby.   The element of estoppel on account of negligence could not arise unless the status of the parties had been changed to their disadvantage, and this does not appear in the case.   We are therefore of the opinion that the instruction complained of was correct, and that the evidence warranted the finding for plaintiff in accordance with the law as therein declared.

The views already expressed disposes of the assignment of error relating to the court's refusal of the first instruction asked by the defendants.

It appears from the testimony that on one of the notes, after being signed by all of the directors including the secretary and before its delivery to the cashier of the bank, the secretary added the abbreviation "Sec." to his name so as to show that he, as well as the president, had signed for the purpose of attesting the signature of the corporation. There is no evidence that the bank knew of this change in the note after it was signed except that the word appeared in different ink from that of the original signatures. Be that, however, as it may, the testimony on the part of the secretary establishes the fact that he added the word pursuant to the common custom of signing the name of the corporation to add his own name as secretary. An alteration made by one of the obligors before delivery to the obligee for the purpose of expressing the real intention of the parties does not avoid the contract. 1 Cyc. p. 148; *Foote* v. *Hambrick,* 70 Miss. 157; *Cole* v. *Hills,* 44 N. H. 227. The mere fact that the abbreviation "Sec." was in different ink does not of itself make it a manifest or ordinarily observable alteration so as to carry with it notice to one who afterwards accepts it; and, there being no other evidence of notice to the bank that the word had been added, even if the alteration should be deemed material, it did not affect the liability of the other indorsers or makers of the note. *State* v. *Churchill,* 48 Ark. 426.

The court properly overruled the defendant's motion to transfer the case to the chancery court. The case, as already stated, does not involve the question of reformation of the instrument sued on, and no grounds are stated in the answer which would warrant the interposition of a court of equity.

Judgment affirmed.