## FLEISCHER *v*. McGEHEE.

### Opinion delivered January 19, 1914.

CONTRACTS—UNILATERAL MISTAKE—RESCISSION.—A contract for the sale of timber will be rescinded, when there is a unilateral mistake, the appellant having entered into it under a mistake as to the identity of the subject-matter of the contract.

Appeal from Chicot Chancery Court; *Zachariah T. Wood,* Chancellor; reversed.

*Baldy Vinson,* for appellant.

1. If defendant knowingly took advantage of Tusheck's belief that he was purchasing the Fritz timber, the court should grant relief under the principle announced in *Hubert* v. *Fagan,* 99 Ark. 480. See also 100 Ark. 565; 101 Ark. 558; 102 Ark. 187.

2. The mistake here proved is unilateral, and the prayer is for rescission. Although equity will not decree the reformation of an instrument for an unilateral mistake, but only for mutual mistake, yet it will rescind a contract for such a mistake. 34 Atl. 1099, 55 Am. St. Rep. 577; 56 Atl. 713.

*H. K. Toney,* for appellee.

McCULLOCH, C. J. Appellant instituted this action against appellee in the chancery court of Chicot County to compel the rescission of a contract for the sale and purchase of standing timber on appellee's land in that county.

Appellant resided in the city of Memphis, and was engaged in the business of manufacturing and shipping staves. He purchased timber in Arkansas and Mississippi for the purpose of manufacturing split staves.

Appellee owned a tract of land, containing 280 acres, in Chicot County, Arkansas, and a small portion of it was in cultivation. The stave timber had been sold to another concern several years before this transaction and before appellee became the owner of the land.

Appellant had in his employ a man by the name of Tusheck, who was an experienced man in manufacturing and handling staves. He investigated tracts of timber land which appellant contemplated purchasing, and appellant relied entirely upon Tusheck's judgment. Several months before this transaction occurred, Tusheck was in Chicot County and was shown by one Taggart, who was engaged in the real estate business, a tract of land known as the Fritz land, adjoining appellee's land. Tusheck looked over the timber on the Fritz land carefully, but abandoned effort to purchase it on account of the price being too high. Later appellee and Tusheck had some negotiations concerning a purchase, but did not agree on a price. Tusheck offered at that time to pay $4 per acre for the timber. In January, 1912, a short time after the last conversation between appellee and Tusheck, appellee entered into negotiation by wire, and later, by letter, looking to the acceptance of the offer which had been made to him by Tusheck. Appellant knew nothing of the prior negotiation and informed appellee that as soon as Tusheck returned from the woods in Mississippi he would send him down there to look into the matter, and later he wrote appellee that he would take the timber according to the proposition made. Tusheck went down to Lake Village, where appellee was in business, and the deal was closed on January 22, 1912, appellee executing a deed to appellant and forwarding the same, with draft attached for $1,000, the agreed price of the timber. Tusheck did not see the deed, and testified that it was placed in the postoffice before he could find appellee to confer with him about it.

Appellant bases his right to a rescission of the contract on the ground that he thought that he was buying the lands which Tusheck had examined, known as the

Fritz land. The testimony of Tusheck tends to establish a positive misrepresentation on the part of appellee as to the ownership of the lands. He states that, when he saw appellee, the latter represented to him that it was the lands which Taggart had shown him which was the subject of the negotiations. This is denied by appellee, and Taggart also testified that he told Tusheck, at the time he showed him the lands, that the same belonged to Fritz. The chancellor made a finding against appellee as to the alleged false representations concerning the identity of the land which is the subject-matter of the sale; and our conclusion is that the finding of the chancellor on that point is not against the preponderance of the testimony, but the testimony is entirely convincing that, even though appellee made no affirmative misrepresentation as to the identity of the land, Tusheck thought that he was closing the deal for the Fritz land. There are many circumstances which convince us that that is the correct conclusion from the testimony. In the first place, there was very little merchantable timber on the lands described in the deed which appellee executed, and none of the character which appellant, through his agent Tusheck, was seeking to purchase. Appellant was engaged entirely in the split stave business, and was not handling any other character of timber. Appellee's land had a little timber that could be used in converting into bolts for sawed staves, but none that could be used in making split staves. Appellee admits that Tusheck told him, at the time the deal was closed, that Taggart had shown him the land, and, according to the undisputed evidence, Taggart never showed him any land except the Fritz land. It is also shown in the testimony beyond dispute that appellee had been writing to other concerns engaged in the split stave business, and had shown the letters to Tusheck, who was advising him about selling his timber for split stave purposes, which shows clearly that Tusheck had in mind the Fritz land, for he knew that there was no split stave timber on the lands described in the deed. Now, when all of these circumstances are considered, it is perfectly clear that Tusheck

thought he was getting the Fritz land when he closed the deal, and that it was an honest mistake on his part. Appellant knew nothing about the lands at all, and it does not appear that he was ever in that county, but relied entirely upon his agent, Tusheck.

Under those circumstances, we are of the opinion that appellant accepted the deed to the land and paid the price under an honest mistake, thinking that he was getting another tract of land which had timber thereon suitable for use in his business. In other words, it was a case of an unilateral mistake, which courts of equity are empowered to correct by compelling rescission of the contract.

This doctrine is clearly recognized in the recent case of *Frazer* v. *State Bank of Decatur,* 101 Ark. 135. In that case we said:

"The argument of learned counsel for defendant is based upon a misconception as to the difference between reformation and rescission of a written contract on account of mistake of one of the parties. The difference is a very distinct one, for the reformation of a contract involves an effort to enforce it as reformed, whereas the rescission involves an effort to abandon and recede from a contract which the party did not intend to make. One of the parties to a contract can not have it reformed on account of mistake which is not mutual, for to do so would be to enforce the reformed contract which the other party had not intended to make. But a different question is presented where one of the parties to a contract seeks to have it rescinded because of a mistake on his part, for that makes only a case of there being no contract between the parties on account of the fact that there has not been a meeting of the minds of the contracting parties."

Similar language is found in a decision of a New Jersey court as follows:

"In granting relief on the ground of mistake, there is a distinction between the rescission and the reformation of a written contract. A court of equity may rescind a contract for a mistake which is unilateral—that

is, a mistake on the part of one of the parties only. In such case the whole contract is set aside and the parties restored to their original position. * * * To warrant reformation, there must be a mutual mistake, that is, a mistake shared in by both parties." *Green* v. *Stone,* 54 N. J. Eq. 387.

The same doctrine is discussed at some length in the case of *Wirsching* v. *Grand Lodge,* 67 N. J. Eq. 711, 56 Atl. Rep. 713.

Another instructive case on that subject is *Deuris* v. *Pierce* (Mass.) 103 N. E. 296, where the court, speaking through Chief Justice Rugg, said:

"It is an elementary principle of the law of contracts that, if one party thinks he is buying one thing and the other party thinks he is selling another thing, there is no meeting of minds on the subject-matter of the sale. When there is no agreement as to the identity of the subject-matter of the contract there can be no contract. (Citing cases.) Where a conveyance has been made based upon such a misunderstanding, even though it may be innocent on both sides, equity in proper cases will grant relief. (Citing cases.) This branch of equitable relief is distinct from the reformation of contracts entered into by mistake, which must be mutual by all parties before relief can be granted."

The facts in this case bring it within that doctrine, and we think that appellant is entitled to a rescission of the contract, it being clear that it was entered into by a mistake on his part as to the identity of the subject-matter of the contract. Appellant has not cut or removed any of the timber; therefore there is nothing in the way of restoring appellee to his rights by a reconveyance of the timber or surrender of the deed, which appellant has offered to do.

We do not think that appellant, or his agent Tusheck, were guilty of such negligence as would bar the right to claim a rescission.

The decree is, therefore, reversed and the cause remanded with directions to enter a decree in appellant's favor in accordance with the prayer of the complaint.