MURPHY *v.* STEEL.

Opinion delivered July 13, 1925.

1. CANCELLATION OF INSTRUMENTS—MISTAKE.—In an action by grantors to cancel a deed of gift of oil and gas royalty in certain land, evidence held to show that the scrivener made a mistake in describing the land.

2. CANCELLATION OF INSTRUMENTS—MISTAKE IN DESCRIPTION—RELIEF GRANTED.—In an action by grantors to cancel a deed of gift of oil and gas royalty, on the ground that the scrivener made a mistake in describing the land in which the grantors intended to convey the royalty, relief will be granted, though the mistake was unilateral, on the theory that there was no contract because there was no meeting of minds.

3. VENDOR AND PURCHASER—BONA FIDE PURCHASER.—In an action against a trustee to cancel a deed of gift of oil and gas royalty for a mistake of the scrivener in describing the land, the fact that one of the beneficiaries purchased the interests of the other beneficiaries would not affect the grantor's right to relief against the trustee, since the beneficiaries under the trust can have no greater rights under the trust as against the grantors than the trustee who holds the legal title.

4. VENDOR AND PURCHASER—BONA FIDE PURCHASER.—The doctrine of *bona fide* purchaser without notice does not apply where there is a total absence of title in the vendor, as the good faith of a purchaser cannot create a title where none exists.

5. CANCELLATION OF INSTRUMENTS—UNILATERAL MISTAKE—RELIEF.—Where grantors seek to cancel a deed of gift of oil and gas royalty in certain land for a mistake of the scrivener in describing the land, and offer to convey the royalty in the land which was intended, the court may require the execution of a correct deed as a condition of granting the relief sought.

Appeal from Ouachita Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed.

*Gaughan & Sifford,* for appellant.

*Mahony, Yocum & Saye, L. B. Smead* and *Harry Meek,* for appellee.

WOOD, J. This is an action by the appellants against the appellee to cancel a certain deed which the appellants alleged was executed to the appellee through mistake. The appellants alleged in substance that they intended to execute to appellee a deed conveying to him

a one-fourth royalty interest in the SE¼ of the NW¼ of section 28, township 15 south, range 15 west, Ouachita County, Arkansas, in which the appellants had executed an oil and gas lease to one T. J. Murphy; that by mutual mistake, instead of describing the lands as above, the scrivener described it as follows: The NE¼ of the SW¼, section 28, T. 15 S., R. 15 W., Ouachita County, Arkansas; that the lands thus described through error by the scrivener had not been leased to T. J. Murphy, but had been leased to the Roxana Oil & Petroleum Company. Appellants alleged that they had prepared and tendered to the appellee a mineral deed conveying a one-fourth royalty in the oil, gas and minerals in the lands, which it was intended should be conveyed, and they tendered in court such deed containing the correct description. Appellants prayed that the deed containing the alleged incorrect description be cancelled, and that the same be corrected so as to describe the lands as intended by the parties, and that the appellee be required to accept such deed and release all rights under the deed executed to him through mistake.

The appellee answered, denying the allegations of the complaint to the effect that the deed executed by the appellants to him contained an incorrect description. He alleged on the contrary that the deed correctly described the land which the parties intended should be deeded to him.

The facts which the testimony tended to prove are substantially as follows: That the appellants are the owners of certain lands situated in the vicinity of a well designated as "V K F", which was being drilled in the southern part of Ouachita County, Arkansas. The appellants, with other landowners in the neighborhood who were interested in finding oil in that territory, in order to encourage the crew of drillers in their efforts to bring in an oil well, entered into an agreement to give the drillers a royalty interest on a forty-acre tract of appellants' land. It was the intention of the appellant

Murphy at the time he executed a deed conveying to the appellee, who was one of the drillers and named as trustee, to convey a one-fourth royalty in the SE¼ of the NW¼ of section 28, township 15 south, range 15 west. After the V. K. F. well was drilled in and was a producer of oil, the appellant, pursuant to his agreement, went to the office of Gaughan & Sifford, attorneys at Camden, and requested them to prepare a deed to the appellee to the lands as described above. A Miss Maude Robinson, an employee of Gaughan & Sifford and the scrivener who drafted the deed, was given the memorandum showing the description of the land to be embraced in the deed as above indicated. In drawing the deed, Miss Robinson, instead of describing the land according to the memorandum left with her as the SE¼ of the NW¼, section 28, township 15 south, range 15 west, described it, through mistake, as the NE¼ of the SW¼ of section 28, township 15 south, range 15 west. Miss Robinson and appellant J. E. Murphy both testified that the memorandum which was left with Miss Robinson described the lands as the SE¼ of the NW¼ of section 28, township 15 south, range 15 west, and that Miss Robinson inserted the erroneous description describing the lands as the NE¼ of the SW¼, section 28, etc., through mistake. J. E. Murphy testified that the agreement was written the day the V. K. F. well came in in section 29 which was the discovery well of the Smackover field. Dave Reynolds, Sid Umpsted, Guy Campbell, and witness and others were parties to the agreement. The memorandum showing the description of the land which each landowner agreed to convey to the appellee was furnished to the Beacon-Herald, a newspaper published in Camden, Arkansas, for publication, and it appeared in the issue of that paper of August 3, 1922. The original memorandum itself was burned in Dave Reynolds' office. The published memorandum sets out the names of the donors and the names of the appellee as trustee and twelve others who were members of the crew designated as the crew of the Discovery

Well, and it was recited that, in consideration of $1.00 and their faithful work and diligence by way of showing appreciation for the hard work and honesty of the drillers, the donors agreed to deed to them the following described property: "J. E. Murphy 1/32 royalty in the SE¼ of the NW¼ of section 28, township 15 south, range 15 west, forty acres." The memorandum bore date of July 24, 1922.

Murphy testified that a few days after that agreement was executed he had the mineral deed prepared by Miss Robinson in the office of Gaughan & Sifford. At the time the deed was drawn he had not executed the oil and gas lease on the SE¼ of the NW¼ of section 28, township 15 south, range 15 west. But appellant Murphy and wife joined in the execution of a lease to his cousin, T. J. Murphy, so that he could give the boys of the crew a royalty deed in the lands he had leased to his cousin. Murphy introduced a copy of this lease to his cousin, T. J Murphy, bearing date of September 17, 1922, and describing the lands as the SE¼ of the NW¼ of section 28, township 15 south, range 15 west, which lease was duly recorded. Afterwards the deed conveying the royalty to the appellee was prepared as stated and signed by the appellants. It described the lands as already mentioned, and the witness did not discover that a mistake had been made until the fall of 1922. When he learned of the mistake, he went to Camden, and had a correct deed drawn and also a release deed for the appellee and the beneficiaries to sign. Witness testified that he was willing to execute a mineral deed to the land which he intended to convey to appellee as trustee for himself and other members of the drilling crew, which deed he had prepared and tendered and which they refused to accept. On cross-examination witness, among other things, stated that he did not read the deed that was prepared by Miss Robinson after she had written it, and did not compare the description in the deed with the memorandum that had been left in the office before he executed the deed. Before witness knew of any error he told the members of the drilling

crew that the land in which he had conveyed the royalty was east of the well across one forty. He never pointed out the Roxana lease to any of the boys as being the ground covered by the mineral deed. Reynolds, one of the beneficiaries, said something to witness about buying out the interest of some of the others. He bought such interest before witness found out there had been a mistake in the deed. Witness pointed out to Reynolds the forty acres which he had leased to J. T. Murphy, which was east of the discovery well, and the Roxana forty was south of this well. Witness remembered when the well came in on the Roxana lease. He didn't remember that he had discussed that well with any of the V. K. F. drilling crew.

Van Cleve was the field manager for that company, and he informed witness that there must be some mistake. Witness denied that he had told Christy, one of the beneficiaries, that a big well had come in on the lease on which the boys owned some royalty. Witness filed the complaint just as soon as he discovered a mistake had been made in the deed, and soon after appellee and the beneficiaries under it refused to allow the same to be corrected. A dry hole was drilled about three quarters of a mile from the Murphy lease. The SE¼ of the NW¼, section 28, township 15 south, range 15 west, and the NE¼ of the SW¼ of the same section are about the same distance from the Discovery Well. At the time witness made the deed to the appellee, he didn't know that there was any difference in the value of the royalty under the two leases. It made a difference with witness as to which land he would give them a royalty in because he had already sold a one-sixteenth in the Roxana forty. That was the reason witness intended to execute the mineral deed to the appellee and the other members of the crew on the SE¼ of the NW¼, section 28. Witness had already sold some of the other stuff. The Roxana lease is producing the most, and is a great deal better forty.

Miss Robinson testified, and her testimony in every essential detail corroborates the testimony of J. E.

Murphy. She states that the appellant Murphy told her the description to put in the mineral deed to the appellee and to write it subject to the T. J. Murphy lease. She wrote down the memorandum of the description Murphy gave her. It was the SE¼ of the NW¼ of section 28, township 15 south, range 15 west. She knew that a mistake was made. The Murphy lease is correct. She made the mistake in putting in the description of the land. She confused the descriptions and wrote in the deed to the appellee the description that had been used in the Roxana deed, but described the Murphy lease. She was the only stenographer and had a great deal to do. The description she wrote in that mineral deed on that occasion was merely a clerical error. She concludes her testimony substantially as follows: ''I know now I made a mistake because Mr. Murphy told me to write the deed on one of the Murphy lease forty acres. The deed was written on the Roxana lease. * * * I ascertained that I made the error as soon as I saw the deed I wrote. Mr. Murphy came in and said there was an error made, so I fixed up a deed so he and his wife could convey to the young men the SE¼ of the NW¼, and prepared a deed for them to sign back to him the forty which was described through mistake.''

J. D. Reynolds testified that Murphy agreed to give the royalty on a piece of land, and that he sent the agreement that was written up to the Camden paper to publish. In his best judgment the copy appearing in the paper was the agreement as it was prepared and read down at the well to the members of the crew that day.

The appellee testified and introduced the original deed executed to him by the appellants as the trustee describing the land as the NE¼ of the SW¼, section 28, township 15 south, range 15 west, subject to a certain oil and gas lease executed by J. E. Murphy and wife on July 27, 1922, to T. J. Murphy which lease was filed for record July 28, 1922. He testified that this was the same description as was contained in the memorandum contract that was drawn up there and signed by himself, the

appellant Murphy and others. Witness could not be positive about it, however. It seemed like it was the NE¼ of the SW¼, but he was not sure about it. Witness never talked with Murphy about the deed before it was signed and before Murphy made the complaint as to the mistake. At the time he made the complaint there was a dry hole close to the north forty, and there was a good well off-setting the other forty. There was no production near the north forty. Witness told Murphy when he made the complaint of the mistake that he could not sign the deed Murphy wanted him to sign releasing the interests and acknowledging the mistake because some of the boys had spent some money, and there was a dry hole near the forty that appellants wanted them to take and a well off-setting the other forty. Witness told appellant Murphy when he spoke to him about the mistake that witness thought he was wrong and the deed was right.

There was testimony by Reynolds to the effect that, since the deed of appellants to the appellee had been executed, he had bought the interest of three of the other beneficiaries which had cost him $1350. He stated that after the deed in controversy was executed he and Murphy talked about the land. Witness had an ownership map in his pocket, and Murphy said they had made a location on the acreage. Murphy pointed out on the map the Roxana forty. Witness had bought some of the boys' interests before that, and was figuring on buying some more. Witness wished to get the location of the land. At that time witness had bought only one interest and was trying to locate it all. Murphy pointed out the Roxana lease, that is the NE¼ of the SW¼. Witness then bought the other interests and he introduced the deeds to the interests which he had purchased. Witness, on final cross-examination, stated that he didn't know what forty Murphy intended to give them. The beneficiaries didn't have the option or privilege of picking the forty. After the deed was made witness wanted what

the deed called for. He didn't know whether there was a mistake in drawing the deed or not.

Witness Christy testified to the effect that he was one of the crew who drilled the V. K. F. Well. The first big well came in on the Roxana forty. Witness came up to see it. He saw the appellant Murphy, who asked witness if he had come up to see their well. Witness replied, "I don't know whether we had one or not," and Murphy replied, "Yes, the biggest one of the field on the forty I gave you; when you go back you can tell them you have the best well in the field." Witness further stated that Murphy told him and two or three others of the crew that it was on the Roxana forty. He said that was the land described in his deed to the appellee. He agreed to give forty acres, and it could easily have been either of the forties in question.

In rebuttal Murphy testified that he did not have any conversation with Reynolds in which he located on the map the forty on which the Roxana had a lease. He denied that he had ever said to any of the boys that he had given them the Roxana forty. He did not know at the time of these alleged conversations that a mistake had been made in the deed, and that the Roxana forty was described in that deed.

The editor of the Beacon Herald testified that he checked the copy of the memorandum published in his paper with the original. The description in the land first published in the paper opposite the name of J. E. Murphy was the same as that appearing in the original memorandum.

The above are substantially the facts upon which the trial court found the issues in favor of the appellee, and rendered a decree dismissing the appellants' complaint for want of equity, from which is this appeal.

1. The undisputed testimony shows that none of the beneficiaries in the deed executed by the appellants to the appellee had any option or choice in the matter of selecting the land in which the appellants agreed to con-

vey to them a royalty. The selection of this land rested solely with the appellant Murphy. If a mistake was made in the description of the land, it was not a mistake of both parties to the deed, but a mistake solely of the appellants. It occurs to us that the undisputed testimony shows that the scrivener did make a mistake in describing the land in which the appellants intended to convey a royalty to the appellee. The lands were described in the deed as the NE¼ of the SW¼, section 28, township 15 south, range 15 west, when they should have been described as the SE¼ of the NW¼, etc. The testimony of appellant Murphy and of Miss Robinson, the scrivener, as well as the testimony showing the publication of the original agreement in which the lands were correctly described as the SE¼ of the NW¼, etc., make it clear beyond peradventure that the land in which the appellants intended to convey the royalty was the SE¼ of the NW¼, section 28, township 15 south, range 15 west, instead of the NE¼ of the SW¼, section 28, etc., and that the scrivener who prepared the deed, through clerical error, inserted the erroneous description.

In *Frazer* v. *State Bank of Decatur,* 101 Ark. 135, at page 140, we said: "One of the parties to a contract cannot have it reformed on account of mistake which is not mutual, for to do so would be to enforce the reformed contract which the other party had not intended to make. But a different question is presented where one of the parties to a contract seeks to have it rescinded because of a mistake on his part, for that makes only a case of there being no contract between the parties on account of the fact that there has not been a meeting of the minds of the contracting parties."

The rule was again announced by us in *Fleischer* v. *McGehee,* 111 Ark. 626, at page 629, where we quoted from the Supreme Court of New Jersey in *Greene* v. *Stone,* 54 N. J. Equity, 387, as follows: "In granting the relief on the ground of mistake, there is a distinction between the rescission and the reformation of a

written contract. A court of equity may rescind a contract for a mistake which is unilateral — that is, a mistake on the part of one of the parties only. In such case the whole contract is set aside, and the parties restored to their original position. * * * To warrant reformation, there must be a mutual mistake, that is, a mistake shared in by both parties.''

2. It is contended by the appellee that Reynolds was an innocent purchaser of the interests of others in the royalty after the deed of appellants was executed to the appellee, and that therefore his rights must be considered in the adjudication of this controversy, and likewise the interests of those from whom he bought, and who will be liable to Reynolds for the purchase money received by him from them, should his title fail. But, the beneficiaries under a deed conveying the legal title to a trustee can have no greater rights or equities against the grantor than their trustee who holds the legal title. If the trustee acquires no title to the property conveyed, then necessarily the beneficiaries acquired none. There was no title upon which they could bottom any rights or equities in the lands described. Where there is a total absence of title in the vendor, a purchase from him in good faith for a valuable consideration and without notice could not create a title where none exists. The doctrine applicable here, is stated in 39 Cyc, p. 1691, as follows: "The doctrine of *bona fide* purchaser without notice does not apply where there is a total absence of title in the vendor. The good faith of a purchaser cannot create a title where none exists." See numerous cases cited in note; also page 1692, sub. div. (c), and cases there cited. 8 C. J. 1149; *Hawley* v. *Diller*, 178 U. S. 476; *Deskins* v. *Big Sandy Co.* 121 Ky. 601, 607; *Buck* v. *Martin*, 27 Ark. 6.

In *Deskins* v. *Big Sandy Co., supra,* it is held that the doctrine does not apply in favor of a bare equity, for the reason that when the vendor has only a bare equity such fact is notice to the purchaser from him that secret

trusts may be outstanding. Reynolds is not a party to this action. This is an action against the trustee to cancel the deed. If the trustee cannot successfully defend that action, and he cannot, then of course the beneficiaries have no defense. Their status is determined by the status of the trustee.

The appellants offered as a condition of the cancellation of the deed to execute a deed to the appellee as trustee for the beneficiaries named therein to a royalty in the land which he intended to convey, and the trial court should see that this condition is performed. It was within the jurisdiction of the trial court to impose such terms as a condition precedent to the equitable relief which appellants seek and to which they are entitled.

The decree is therefore reversed, and the cause will be remanded with directions to enter a decree in favor of the appellants cancelling the deed in controversy upon the execution by the appellants of a deed to the appellee, as trustee for the parties named, to the SE¼ of the NW¼ of section 28, township 15 south, range 15 west, Ouachita County, Arkansas, in accordance with the stipulations of the contract of July 24, 1922, and for such other and further proceedings as may be necessary, according to law, and not inconsistent with this opinion.