## INTERNATIONAL SHOE CO. v. MOSIER, Adm'x.

No. 24860.    May 21, 1935.

Rehearing Denied Sept. 17, 1935.

Richard O. Rumer, Silverman, Rosenstein & Fist, and R. E. Rosenstein, for plaintiff in error.

W. R. Banker, for defendant in error.

CORN, J. This case was instituted in the district court of Muskogee county, wherein the plaintiff in error, as plaintiff, sued the defendant in error, as defendant, for a sum of money due plaintiff from J. E. Brecheisen, doing business as Breck's Vitality Boot Shop, upon a contract of guaranty signed by defendant's decedent, D. T. Mosier.

For convenience the parties will be referred to herein as they appeared in the lower court.

The cause was tried to the court and a jury. At the conclusion of all the evidence, each of the parties moved the court for an instructed verdict in its and her favor, against the other party. It was then stipulated and agreed by and between the parties that the jury might be discharged from consideration of the case, that the trial court might determine the question of law, there being no question of fact involved as to the amount due, if plaintiff were entitled to recover. Thereafter, the court found the issues in favor of the defendant and against the plaintiff, and rendered judgment accordingly, and plaintiff appeals to this court.

The defendant's sole defense is that between the time of execution of the contract, sued upon herein, and its delivery to the plaintiff there was a material alteration therein, in that the amount which the guarantor's liability was not to exceed was changed from $2,500 to $1,250; this change having been made by J. E. Brecheisen, who, while not a party to the contract, was to be benefited thereby.

The testimony of J. E. Brecheisen is substantially as follows: That he had lived in Muskogee for 21 years, had been engaged in the retail shoe business the most of the

time, that Mrs. Mosier, the administratrix of the estate of D. T. Mosier, is his daughter and the widow of the late D. T. Mosier. That on or about the first of April, 1931, he had a certain conversation in St. Louis, Mo., with the credit manager of the International Shoe Company, wherein he stated to the said manager that he would like to have a credit to the extent of $1,250 for men's shoes and might want $1,250 credit for women's shoes, making a total credit of $2,500, and they agreed to that, and the manager asked him who he could get to guarantee the account. Brecheisen told him that his son-in-law was very much interested and that he would do that. And he brought the blanks home to be filled out and gave them to his son-in-law, Mr. Mosier, and told him the conversation he had with the credit manager in St. Louis, and his son-in-law said. "All right, I will agree to that, and will take care of it during the day." He later returned them to Mr. Brecheisen with his signature at the bottom of the instrument as to his financial statement, and had inserted therein, in the body of the contract, the sum of $2,500, leaving unfilled all other blank places in the contract. Mr. Brecheisen further testified that he had a talk with Mr. Mosier the next morning over the telephone and told him it needed a little more filling in and he said, "All right, I will fix it up." It was again delivered to Mr. Mosier, and after he signed his name again on the contract, it was brought back to the witness with the other blank places in the contract unfilled, and he filled in the instrument by adding the words, "Breck's Vitality Boot Shop, Muskogee, Okla.," and the word "six," and scratched out, or ran some marks through, the figures $2,500 and wrote the figures $1,250, and then sent the same to the plaintiff herein.

The plaintiff has set up several assignments of error in his petition in error, but we deem the only one necessary for the determination of this case is whether the change alleged to have been made in the contract in controversy was a material alteration of said contract and affects the liability of the guarantor.

The undisputed facts in this case are that J. E. Brecheisen, after the contract of guaranty had been finally signed by Mr. Mozier and delivered to him for transmission to the guarantee, ran a pen across the figures $2,500 and wrote the figures $1,250. That seems to be the only defense the defendant has to this action, but she asserts that this constituted a material alteration of the instrument, thereby releasing said guarantor from any and all liability.

It is well settled by the great weight of authorities that where a contract is altered by a third party after execution and before delivery to the person to be benefited thereby without fraud, with the intention of making the contract express the real intention of the parties thereto, such an alteration is not material, and does not in any way affect the liability of those who have executed the same. It appears to us that the change made in the instrument was not fraudulently made and does not affect Mosier's legal relation with the guarantee, and the fact that the change was made not by the guarantee, but by a third person before delivery to him, would assuredly not change the rule as against said guarantee; and it necessarily follows that the alteration was not a material one under the circumstances by which it was made so as to release the guarantor.

In 2 C. J. 1229, section 99, the rule is stated in the following language:

"Where there is a mistake in an instrument whereby the real intention of the parties is left imperfectly expressed, many of the courts consider that a change made by one of the parties to the instrument without the consent of the other party, so as to make it conform to the original intention of the parties and to correct the mistake, is not such an alteration as will avoid the instrument. The reason usually given for the application of this rule is that under the circumstances the change is immaterial and not fraudulent, and therefore does not affect the validity of the instrument. It is also sometimes said that in such cases the assent of the parties to the change will be presumed or dispensed with."

In Frazier, et al. v. State Bank of Decatur (Ark.) 141 S. W. 941, the Supreme Court of that state in the sixth paragraph of the syllabus speaks as follows:

"The alteration of an instrument by one of the obligors before delivery for the purpose of expressing the real intention of the parties does not avoid the contract."

In Lee v. Butler (Mass.) 46 N. E. 52, the Supreme Court uses the following language:

"One of several papers constituting the memorandum of a contract guaranteeing payment of a loan erroneously stated the amount of the loan, as shown by the other papers, and, with a view to correct the error, the guarantee, in good faith, altered the figures, but the correction was also erroneous. Held, that such alteration did not affect the competency of the paper to prove the contract of guaranty.

"In the absence of evidence to the con-

trary, the alteration will be presumed to have been made in good faith."

From Hendrickson et ux. v. Lyons et al. (Wash.) 209 P. 1095, we quote:

"An alteration in an instrument, done through ignorance pursuant to ill timed and ill-considered advice in an honest effort to make the instrument expressive of the intent of the parties, held not to work a forfeiture of the rights thereunder."

The record in this case shows that Brecheisen made known to the guarantor the entire conversation between himself and the guarantee's agent in the city of St. Louis, and, therefore, Mosier knew that if Brecheisen decided to order but one line of shoes the guaranty was to be for the maximum amount of $1,250. It further discloses that Mr. Mosier delivered the guaranty contract to Brecheisen incomplete, so that as delivered it was not a contract in any sense. It further discloses that Brecheisen, before mailing the contract, filled in the necessary blanks to make it a completed contract. Mr. Mosier, being the son-in-law of Mr. Brecheisen, naturally would be personally interested in the progress of the business venture of the principal, and, therefore, notwithstanding the fact that the principal testified that there was never at any time between himself and Mosier mention of the amount of the guaranty subsequent to its having been delivered to him, such statement is inconsistent with a part of his testimony wherein he stated that he placed his order with Mr. Scott, salesman in that territory, at the Severs Hotel, and about ten days later he made a trip to St. Louis to get the order; that in St. Louis he told Mr. Jordon, the sales manager, that he might want $1,250 for men's shoes, and $1,250 for women's shoes, that the guaranty was to be $1,250, unless he decided to put in both lines of shoes, then the maximum amount of the guaranty should be $2,500; that Jordon agreed to get Mr. Mosier, Brecheisen's son-in-law, to guarantee the account; that Brecheisen went back home, took the blanks, gave them to Mr. Mosier and told him all that happened at St. Louis, and that Mr. Mosier said he would take care of the matter.

With the facts as above stated it is obvious that Mr. Mosier understood that the amount was to be either $2,500 or $1,250, depending upon the amount of credit extended to Brecheisen, and was willing for it to be for the amount of credit he was to receive. After Mr. Breichesen received the contract from Mr. Mosier he decided he only wanted credit for the amount of $1,250;

therefore, he changed the figures to conform to the agreement he had with the manager of the plaintiff, all of which was known and agreed to by Mr. Mosier.

A guaranty contract will not be vitiated by an alteration, made in good faith to conform to the agreement, after it is signed by one party and turned over to another for delivery under circumstances which import authority to perfect it for the purpose of rendering it available to the person to whom it is to be delivered.

We have examined the record in this case with care, and are of the opinion that the demurrer to the evidence of the defendant by the plaintiff should have been sustained and judgment rendered for the plaintiff for the amount prayed for.

The judgment of the trial court is, therefore, reversed, with directions that the demurrer of the plaintiff to the evidence of the defendant be sustained and judgment rendered for the plaintiff for the full amount prayed for in its petition.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and PHELPS, JJ., concur.