Hubbard *v.* Elam.

5-3398 385 S. W. 2d 925

Opinion delivered January 25, 1965.

*John D. Eldridge,* for appellant.

*James F. Daugherty,* for appellee.

Paul Ward, Associate Justice. Appellants prosecute this appeal from a decree of the trial court refusing to cancel a warranty deed executed by them to appellee, R. L. Elam.

On December 29, 1962 appellants, who apparently owned considerable lands in Woodruff County, entered into a contract to sell Elam 80 acres of land for the sum of $8,000—$1,000 in cash and the balance in five equal annual installments. On January 18, 1963 the deed was executed and delivered in accordance with the contract. Thirty acres of the land were (or previously had been) in cultivation.

Briefly stated, the litigation arose out of the following factual situation. When the contract was entered into it was apparently assumed by appellants that they could sell the land without transferring any of the rice or cotton allotments. However, it was later determined that, according to the regulations of the Agricultural Stabilization Conservation Committee of the Department of Agriculture, 6.4 acres of cotton and 14.1 acres of rice allotments must accompany the land being conveyed.

In their complaint against Elam (and two renters on the land who are not concerned in this appeal) appellants alleged, in addition to the facts above set out, that "there was an express agreement between the parties and it was the distinct understanding that no allotted crop . . ." would pass with the sale, and that "the purchase price was based on that assumption"; that there was no meeting of the minds; that the contract "is subject to cancellation on the grounds of a mistake . . ." Tender of the $1,000 down payment was made in court, and the prayer was for cancellation of the deed. In answer, appellee denied all material allegations in the complaint, and asserted that the deed was executed without any reservation or limitation. After a full hearing the trial court held that appellants "have not met the burden of proof which evolves upon them . . .", and then dismissed appellants' complaint. This appeal follows.

The only point relied on by appellants for a reversal is that "the preponderance of the evidence entitled plaintiffs (appellants) to a recision of the conveyance . . . on the grounds of mistake and unjust enrichment". Actually, in their argument, appellants urged three separate grounds. *One,* Mutual Mistake; *Two,* Unilateral Mistake; and *Three,* Unjust Enrichment.

*One.* We agree with appellants that our decisions make it clear that Equity has power to cancel a transaction for a mutual mistake by the contracting parties. It appears to us however that appellants are in no position to urge such ground in this case. In their complaint appellants stated that "there was an express agreement

between the parties and it was the distinct understanding that no allotted crops, either rice or cotton, would pass with the sale of the land and the purchase price was based upon that assumption''. To sustain that part of the complaint Mr. Hubbard testified to the effect that he had such an understanding with Mr. Elam. The vice president of the First State Bank of McCrory was called to confirm a conversation between Mr. Elam and Mr. Hubbard, but he admitted he was not sure the matter of crop allotments was brought to the attention of Mr. Elam. Mr. Elam testified positively that they had no such agreement. In this situation the chancellor held appellants ''have nolt met the burden of proof which evolves upon them''. We cannot say the chancellor's holding on this point was contrary to the weight of evidence, especially in view of other facts disclosed by the record. Mr. Hubbard signed a contract to sell, he signed a warranty deed, and he wrote two letters to Mr. Elam before the deal was closed, and the matter of crop allotments was not mentioned in any instance.

*Two.* Appellants ably argue that the case should be reversed because of a unilateral mistake made by them. Apparently this contention is based on the fact, or rather the assertion, that Mr. Hubbard did not know the allotment would follow the land. Several citations are listed in support, such as: *Frazier* v. *State Bank of Decatur,* 101 Ark. 135, 141 S. W. 941, and *Fleischer* v. *McGehee,* 111 Ark. 626, 163 S. W. 169. These cases do hold that a contract between two parties may be rescinded (as opposed to being reformed) by a chancery court because of a mistake of one party only. We think, however, these cases have little, if any, relevancy here because of the dissimilarity of the factual background.

What appears to be the modern, and we think the better, rule relative to recision for a unilateral mistake, is well stated in 13 Am. Jur. 2d, Cancellation of Instruments § 32, which reads:

''Equity will relieve a party from a unilateral mistake that was a result of fraud or duress or was accom-

panied by other special facts creating an independent equity on behalf of the mistaken person, such as inequitable conduct of the other party, but cancellation should not be decreed against a party whose conduct did not contribute to or induce the mistake and who will obtain no unconscionable advantage therefrom.''

In *Hubbert* v. *Fagan*, 99 Ark. 480, 138 S. W. 1001, the Court quoted with approval the following:

''Where relief is given because of the mistake of one party alone, it is where it is induced by the conduct of the other party or because the other seeks unconscionably to take advantage of it, and the ground of jurisdiction is really fraud.''

Appellants say however that if there was not a mistake of *fact* then there was a mistake of *law* in that they did not know the allotment followed the land. The matter of allotment's appears to be a matter of government regulations, but whether this be considered a mistake of *law* or *fact* is of no consequence. In *Security Life Insurance Company* v. *Leeper,* 171 Ark. 77, 284 S. W. 12, we said:

''The final contention is that there was a mutual mistake as to the law which induced the settlement, and that appellee is not bound by it. It is a rule of almost universal application that a mistake of law, in the absence of fraud or undue influence, does not afford grounds for the abrogation or reformation of a contract.''

There is no hint in this case that appellee practiced fraud or undue influence on appellants.

The record discloses that after the contract was signed but before the deed was signed and delivered appellants learned that 6.4 acres of cotton allotment would go to appellee, and that appellants' attorney wrote a letter of protest to appellee's attorney demanding more money for the land. The record further discloses that before appellee knew of this protest appellants signed the deed and mailed it to appellee. It was after the deed was delivered to appellee that appellants learned that 14.1 acres of rice allotment went with the land. We feel

that the above incident in no way affects the issues here raised by appellants. The reason is that if any mutual or unilateral mistakes were made by the parties hereto or either of them they were made before the contract and the deed were signed and delivered.

*Three.* We find no merit in appellants' final contention that the deed to appellee should be cancelled on the ground of unjust enrichment. This contention is based on the uncontradicted evidence that land with allotments is much more valuable than land without allotments. For support of this contention appellants rely on *Linder Corporation* v. *Pyeatt,* 222 Ark. 949, 264 S. W. 2d 619, and on 13 Am. Jur. 2d, Cancellation of Instruments § 25. We find that the Pyeatt case deals with the cancellation of a restrictive covenant under a factual situation wholly unlike that of this case, and that it has no bearing on the issue here considered. A casual reading of the material portions of the Am. Jur. reference reveals no support for appellants' contention on the point here in issue:

"The rule is clear that inadequacy of the consideration is not, in itself, a sufficient ground for cancellation of any agreement or instrument, including a deed. But in determining whether an instrument should be canceled, inadequacy of the consideration is a factor to be considered in connection with the presence of other inequitable features of the case. And where the consideration is grossly inadequate, equity will lay hold of slight circumstances of fraud, duress, undue influence, or the like, in granting relief by the way of cancellation."

Again, we repeat, appellants make no contention that appellee exercised any duress or undue influence, or engaged in any fraudulent conduct, to induce them to sell the land for $8,000.

Affirmed.