CENTEX CONSTRUCTION CO., Inc.,
Appellant,

v.

Worth JAMES, d/b/a Worth James Construction Co., and the Fidelity and Casualty Company of New York, Appellees.

No. 18524.

United States Court of Appeals
Eighth Circuit.

March 30, 1967.

Leon B. Catlett, of Catlett & Henderson, Little Rock, Ark., for appellant. Catlett & Henderson, Little Rock, Ark., were on the brief.

Herschel H. Friday, of Smith, Williams, Friday & Bowen, Little Rock, Ark., for appellee. James W. Moore, Little Rock, Ark., was with him on the brief.

Before MATTHES, LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

Worth James Construction Co. sought declaratory relief pursuant to Tit. 28 U.S.C. § 2201 for recision of a construction subcontract to be performed in New Orleans, Louisiana. Appellant Centex was the general contractor under a contract with the City of New Orleans. Centex filed a counterclaim, joining appellee's bonding company, for $104,-372.19, this amount being the excess it claimed in expense and cost of reletting the subcontract because of appellee's refusal to perform. The district court heard evidence and made findings of fact, holding in favor of the appellees. The court allowed recision of the contract and dismissed appellant's counterclaim. Appellant brings this appeal from the judgment below. A full statement of the facts and the law applicable is found in the lower court's opinion, James v. Centex Construction Co., D.C., 255 F. Supp. 508. We affirm.

In August 1963, appellee James was invited by appellant to bid on sewer work in New Orleans. Competitive bids were filed by other contractors, ranging from $773,000 to $532,000. Appellee is an individual who does business under the name of Worth James Construction Co. His home base of business is in Arkansas. Appellee's bid was approximately $100,-000 below the others, and he was awarded the contract at $431,861.81. It was first discovered by James' superintendent in October 1963 that it would be necessary to excavate on the average more than two feet deeper than originally figured in their bid, and there would be no additional compensation for it. This information was first disclosed in "cut sheets" provided by appellant in October. The basic difference between the James bid and the other contractors arises because of this additional excavation.

When appellee discovered his mistake, even though he had moved men, equipment and material to the job, he refused to continue his work and filed this suit for recision.

The district court found that: (1) appellee's mistake on his bid was non-negligent, (2) the mistake was induced by appellant, and (3) appellant knew that James had made a serious mistake and also knew or should have known the nature of the mistake.

■ This court must accept the lower court's factual determination unless clearly erroneous. Under Arkansas law (agreed upon by the parties to be applicable) to allow recision proof must be clear and convincing, and not simply by the preponderance. Herr v. Murphee, 240 Ark. 834, 402 S.W.2d 393; Foster v. Dierks Lumber & Coal Co., 175 Ark. 73, 298 S.W. 495; Hutcheson v. Frito-Lay, Inc.. 315 F.2d 818 (8 Cir., 1963). Although the lower court does not specifically assess the evidence in this light we, nevertheless, feel it meets this heavy burden of persuasion.

■ Appellant contends that the mistake was not mutual. However, his reliance upon the doctrine of mutual mistake is applicable only to cases involving *reformation*. E.g., Fullerton v. Storthz, 182 Ark. 751, 33 S.W.2d 714. Cancellation of the instrument does not require mutual misunderstanding. Arkansas State Highway Commission v. Ottinger, 232 Ark. 35, 334 S.W.2d 694; Hubbard v. Elam, 238 Ark. 976, 385 S.W.2d 925. The 1965 decision of *Hubbard* casts some doubt upon the validity and full acceptance of the *Ottinger* case and its predecessors in Arkansas. Prior to *Hubbard*, Arkansas law was clear that a unilateral mistake would be grounds for recision if the moving party was non-negligent *and* the parties could be restored to their *status quo*. The mistake had to relate to a material feature of the contract and be of such consequence that it would be unconscionable to enforce the bargain. Arkansas State Highway Commission v. Ottinger, supra; Frazier v. State Bank of Decatur, 101 Ark. 135, 141 S.W. 941;

Fleischer v. McGehee, 111 Ark. 626, 163 S.W. 169. Contra, Restatement, Contracts § 503. However, in Hubbard v. Elam, supra, 385 S.W.2d at 926–927 although the Arkansas court recognizes its former rule, Mr. Justice Ward states:

"What appears to be the modern, and we think the better, rule relative to recision for a unilateral mistake, is well stated in 13 Am.Jur.2d, Cancellation of Instruments § 32 which reads:

'Equity will relieve a party from a unilateral mistake that was a result of fraud or duress or was accompanied by other special facts creating an independent equity on behalf of the mistaken person, such as inequitable conduct of the other party, but cancellation should not be decreed against a party whose conduct did not contribute to or induce the mistake and who will obtain no unconscionable advantage therefrom.'

In Hubbert v. Fagen, 99 Ark. 480, 138 S.W. 1001, the Court quoted with approval the following:

'Where relief is given because of the mistake of one party alone, it is where it is induced by the conduct of the other party, or because the other seeks unconscionably to take advantage of it, and the ground of jurisdiction is really fraud.' "

Relevant only to the overall circumstances, as the trial court found, appellant had knowledge immediately after the bids of the gross variance of appellee's figures with the other contractors. However, more significant under the *Hubbard* rule is whether appellee was induced to make his mistake by reason of conduct of the appellant.

The testimony reflects a sewer contractor always estimates the depth of his excavation from the "ground lines" as disclosed in the plans and specifications. As more fully disclosed in the lower court's opinion, appellee's mistake was in assuming the "curb lines" shown on the plans submitted for bidding to be "ground lines." The pivotal issue surrounds appellee's assumption that they were the same: Was it his negligence or was he reasonably justified in light of appellant's conduct to make his bid accordingly?

There are many factors considered by the trial court, the most significant being appellant's plans and specifications submitted to appellee prior to the competitive bidding. Appellant's "Schedule of Prices" recited the approximate amount of pipe necessary to be laid at various depths and appellee was required to enter his bid for each of the "cuts" at the respective depths shown. The Schedule sets out the specific depths involved, without reference to whether they are measured from ground level or "curb line." Appellant assumed the Schedule measured the proposed excavations from ground level. James testified that in 29 years of experience he had not seen a set of sewer plans which did not show the top of the ground. Reference to depths other than from the "ground line" could have little significance to appellee. As the record reflects, H. P. Farnsworth, the general contractor who was given the job after appellee quit, said: "A profile reflecting a proposed curb line which was not in the vicinity of the sewer line would be of no value." Unfortunately in this case, the "proposed curbline profile" was approximately two feet below natural ground level, where appellee would be required to dig. James did not know this fact at the time of his bid. Three of the local contractors bidding on the job had personal knowledge that the ground level was two feet higher than the plans showed.

When James received the ground level profiles from appellant in October 1963, he became aware of this condition. The evidence reflects this circumstance drastically affected the cost of the excavations necessary. Appellee's brief summarizes this evidence:

" * * * Thus, all of his unit price bids for the various cut brackets had been underestimated by at least 2 feet or more. And, in the New Orleans area, as the depth of sewer trenches increases, construction costs increase

rapidly and progressively, not mathematically (R. 105, 119, 134). Moreover, the effect of this increased trench depth would eliminate the 6–8 feet depth classification in the Schedule of Bid Price, drastically increase the number of feet of pipe to be laid in the costlier deeper classifications of the proposal which James' bid did not take into consideration, and would have required the placement of pipe in depths up to 18 feet for which there was no bid classification in the original proposal submitted to James by Centex (R. 79–80)."

Section D of the General Specifications informed James that he would be paid from ground level. The evidence is clear and convincing that appellee was misled by the Schedule and had reasonable grounds to assume "curb line" referred to "ground line" when the Schedule was read in conjunction with the plans. Appropriate to the present case is Judge Sanborn's aphorism:

" * * * it is as clear as the sun at noon in a cloudless sky that the minds of these parties never met on such a proposition, and that they never contemplated or intended to make any such contract."

Salt Lake City v. Smith, 8 Cir., 104 F. 457, 464.

Appellant urges that James should have investigated this ambiguity and that he is now estopped to deny his own mistake. We do not so understand the law where appellee has demonstrated a good faith reliance upon the plans and specifications submitted to him. It is well settled where one party furnishes plans and specifications for a contractor to follow in a construction job, he impliedly warrants their sufficiency for the purpose in view. United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166; Montrose Contracting Co. v. County of Westchester, 2 Cir., 80 F.2d 841. It has long been recognized a bidder need not make investigation beyond the representations in the plans and specifications, particularly where the documents were prepared for the guidance of bidders, when the specifications are unequivocal and leave no room for doubt. See United States v. Utah, Nevada & Calif. Stage Co., 199 U.S. 414, 26 S.Ct. 69, 50 L.Ed. 251; Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898; United States v. Lundstrom, 9 Cir. 1942, 139 F.2d 792. It would be unconscionable to enforce the contract as appellant contends.[1]

Judgment affirmed.

1. The learned trial judge wrote:
" * * * One can induce a person to act by silence as well as by spoken words or operative acts. It would have been easy for Centex to have told plaintiff that he should take into consideration the fact that he would have to dig from a ground surface about two feet above the curb line, and that the depths with respect to which payments would be made would be calculated from the curb line and not from the ground line. In common fairness Centex should have given plaintiff that information in advance and not left it to him to discover for himself, or should have permitted him to withdraw his bid or to rebid when it appeared that a serious mistake had been made." 255 F.Supp. at 515.