WALTHOUR *v.* PRATT.

Opinion delivered April 11, 1927.

1. BROKERS—AGENCY QUESTION OF FACT.—In an action to recover a secret profit made by a broker in purchasing a lot for plaintiff, the question whether defendant was the agent of plaintiff was one of fact for the jury.

2. APPEAL AND ERROR—CONCLUSIVENESS OF JURY'S FINDING.—The finding of the jury on a question of fact, where there is any substantial evidence to support it, cannot be disturbed by the Supreme Court.

3. BROKERS—PROOF OF AGENCY.—To establish a broker's agency, the evidence need not show an express agreement, but it may be implied from circumstances, such as the relation of the parties and their conduct with reference to the subject-matter of contract.

4. BROKERS—SECRET PROFIT.—A broker employed to buy land for his principal, who purchases it from the owner for $1,500, and procures a deed to a third person, who conveys it to his principal for $1,850, is liable to his principal for the difference as secret profit.

5. TRIAL—ASSUMPTION OF DISPUTED FACT.—In an action against a broker to recover secret profit made by the agent in purchasing

lots for the principal, an instruction stating to the jury that plaintiff would be entitled to recover whatever secret profits, if any they find, etc., was not erroneous as assuming that defendant made a secret profit.

6. PRINCIPAL AND AGENT—SECRET PROFIT—FRAUD.—In an action to recover secret profit made by an agent in purchasing lots for his principal, it was not necessary to prove fraud in order to entitle the principal to recover.

7. PRINCIPAL AND AGENT—DUTY OF AGENT.—An agent is under duty to represent his principal faithfully, and he cannot acquire any private interest of his own in opposition to his principal.

8. PRINCIPAL AND AGENT—DUTY OF GRATUITOUS AGENT.—The fact that an agent acts gratuitously does not relieve him of liability for wrongful acts or negligence, whether they amount to fraud or not.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; affirmed.

*George A. McConnell,* for appellant.

*Fred A. Isgrig, E. B. Dillon* and *Philip McNemer,* for appellee.

MEHAFFY, J.  The appellee, Elsie Pratt, and her husband, R. C. Pratt, filed suit in the Pulaski Circuit Court against J. D. Walthour, the appellant, alleging that R. C. Pratt had entered into a contract with appellant to purchase certain lots 1 and 2, block 2, Pinehurst Addition to the city of Little Rock, from the owner, who was unknown to the plaintiff; that said Walthour was instructed by plaintiff to purchase the property for the least sum possible; that, in pursuance of said agreement, the defendant located the owner, and reported to plaintiff that he could not get the owner to state the price, but requested the plaintiff to make an offer to the owner; that, relying upon the statements, plaintiff offered $1,850 and instructed defendant to convey the offer to the owner, and, if satisfactory, to have deed made to Elsie Pratt; that, instead of having deed made to plaintiff, defendant purchased the property for himself through one J. S. Bailey, who was in collusion and connivance with the defendant, purchased the property in his name for the sum of $1,500, and that Bailey con-

veyed the property to plaintiff for $1,850; that defendant paid only $1,500 of this to the owner, making a profit for himself of $350.

Defendant answered, denying all the material allegations of the complaint. Thereafter R. C. Pratt's name was stricken out, and the case proceeded to trial in the name of Elsie Pratt as the plaintiff.

Elsie Pratt testified, in substance, that she and her husband went out with Mr. Walthour to look at some lots; that was the first time she had ever met him, and they looked at lots which belonged to Mr. Walthour, but she did not care for them, and later they came to the lots involved in this suit; that she asked Mr. Walthour about them, and he said they belonged to Mr. Cox. Her husband asked if he had any idea what Mr. Cox wanted for them, and Mr. Walthour said he did not know, but he imagined about $2,100. They told Mr. Walthour to find out what he would take for them, and that thereafter her husband conducted the negotiations, and that she signed the notes, but did not notice the name of the payee and never noticed the name of the grantor when the deeds were delivered to her; that she did not inspect it more closely because she thought Walthour would do the right thing; that she signed the notes and made the payments; gave the money to her husband, and that it was her own money; that it was on a Saturday in July when they looked at the lots.

R. C. Pratt testified. in substance, that he went out with his wife and Walthour, and they did not like the lots first shown them, but they saw these lots, and Walthour told them there was not a chance to get price down below $2,100, and suggested that Pratt make an offer, and he did make an offer of $1,850. He sign the contract, but did not remember seeing the name Bailey on it; he placed confidence in the bank to loo after his affairs, and just signed the contract and paid no attention to it. He said that Walthour later came to the house and said that Cox had accepted their offer. He gave him a check for $1,105, the balance to be paid $2

a month. They did not have the abstract examined. He carried the deeds home and put them in a trunk, and did not look at them; did not notice who the grantor was. Later he began to investigate, after he had a conversation with Mr. Cox, and looked over the papers, and saw Bailey's name on the notes, and that was the first thing he knew of Mr. Bailey. He never read the contract. He never let his eyes get above the bottom line; he just signed the papers.

Contract was introduced, showing the agreement to purchase the lots for $1,850, the payment of $1,100 in cash, and the balance at $25 a month. Cash payment of $100 was put up to bind the contract.

Tipton Cox testified, in substance, that he owned the lots, and that Mr. Walthour came to him, or called him over the 'phone, asking him what he would take for the lots, and he told him $1,500, and finally agreed to take $1,400 net. This was allowing a commission to Walthour of $75. He said Pratt was buying it, that is, he mentioned the name of Pratt. It seems, when the deed was made, he said the deed would be made to Mr. Bailey, as there was some financing to be done. At the time he signed the contract he did not notice to whom he was making the offer; he was paid $1,400, and never paid any attention to the contract. The conversation was that Pratt was buying the lots to put a brick veneer house on, that was one of the considerations. There was some talk about making the deeds to Bailey on account of some financing, but he never gave that any thought. The acceptance of the offer from Bailey was dated July 20. He had not, prior to this time, listed these lots with him for sale. Walthour merely called him up and asked what he would take for these lots. He had sold some lots to Walthour prior to this.

The defendant testified, in substance, that he was the manager of the real estate department of the W. B. Worthen Company, and works on a commission basis, part of which goes to the bank and part to him; that he met Mr. and Mrs. Pratt on Saturday morning, July 20,

took them out and showed them his lots. They did not
like them, and, coming back, they came by lots 1 and 2,
and Mr. and Mrs. Pratt said they were nice lots, but he
told them that he did not own them, and the party who
owns them wants $2,000 or $2,100, and he had just sold
them for Cox the day before to J. S. Bailey. He bought
them for an investment. Bailey is the brother-in-law of
Walthour. He did not tell Pratt who owned the lots, but
he thought that made no difference. He never at any
time told them that Cox owned lots 1 and 2, or that he was
negotiating for them to buy these lots from Cox. They
never agreed at any time to pay him anything for finding
the lots for them. He wrote this contract that Pratt
signed; he told him if he would make an offer for $1,850
he could possibly get it through for him; that it was cus-
tomary in real estate transactions to put up some earnest
money. He did not say to buy the lots from Cox or
Bailey, and did not ask who they belonged to. They
never at any time agreed to pay any commission for his
services. He was representing Bailey, and Bailey paid
him a commission of $92.50, that is all the commission he
made except the $75 commission on the sale from Cox
to Bailey. There was no connivance or scheme between
him and Bailey, as charged in the complaint, and the
charge that they were in collusion, he says, is untrue.
It was a straightout sale. There were two sales.

J. S. Bailey testified, in substance, the same as
Walthour with reference to the purchase of the lots, and
that there was no collusion.

The above statement of the evidence is sufficient to
show the issues and the contentions of the parties. The
jury rendered a verdict in favor of the plaintiff for
$350. Defendant filed its motion for a new trial, which
was overruled and exceptions saved, appeal to the
Supreme Court prayed and granted.

The appellant earnestly contends that there is no evi-
dence to show that he was the agent of appellee, and
that, for that reason, the court should have directed a
verdict in his favor. As to whether he was the agent

of Mrs. Pratt is a question of fact properly submitted to the jury, and, under the facts as developed in this case, the jury might have found either way. They might have found that there was no agency. They however found that the agency did exist, and there is some substantial evidence to support this finding, and their finding of this fact is binding on this court.

It has been held many times that the findings of a jury on questions of fact, where there was any substantial evidence to support it, could not be disturbed by this court. It is not necessary, in order to establish agency, that the evidence show any express agreement.

"It is not essential that any actual contract should subsist between the parties or that compensation should be expected by the agent; and while the relation, in its full sense, invariably arises out of a contract between the parties, yet the contract may be either express or implied. * * * Whatever evidence has a tendency to prove an agency is admissible, even though it be not full and satisfactory, and it is the province of the jury to pass upon it. Direct evidence is not indispensable—indeed, frequently is not available—but, instead, circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject-matter of the contract." 21 R. C. L. 819-820.

"While the relation of agent and principal cannot be presumed and cannot be established by the acts or declarations of the agent in assuming authority, yet such relation and the authority of the agent, if the relation can be proved, can be shown by circumstances as well as by positive proof." *Moore v. Ziba Bennett & Co.,* 147 Ark. 216, 227 S. W. 753.

In the case at bar the evidence tends to show that the appellee requested appellant to see the owner of the lots, and appellees testify that the appellant told them it was Mr. Cox; that an offer of $1,850 was made; that afterwards appellant told appellee the offer had been accepted, a contract was signed, and afterwards deeds were executed and money paid. Tipton Cox testified

that, when Walthour came to him or talked to him, he understood that Pratt was purchasing the lots, or that Pratt was the one making the offer, and that he was to make the deed to Bailey because some financing was to be done. We think the evidence sufficient to support the verdict of the jury finding that there was in fact an agency.

It is also earnestly contended by the appellant that there was no evidence of fraud or collusion, but this was also a question of fact for the jury, and, if there is any substantial evidence upon which to base the verdict, it cannot be disturbed by this court, and we think there was substantial evidence from which the jury might have found that the appellant was the appellee's agent, and, while acting as her agent, purchased the property from Mr. Cox for $1,500, and had the deed made to Bailey and then conveyed to appellee for $1,850. The appellant contends that there is no fraud, and that the court committed error in its instructions, because the suit was based on fraud. We cannot agree with appellant in this contention. The complaint does not allege fraud in so many words, but it alleges that, instead of having the deed executed to plaintiff, the defendant purchased the property for himself through one Bailey, who, in collusion and connivance with the defendant, purchased the property in his name for the sum of $1,500, and thereafter Bailey conveyed the property to Elsie Pratt for the sum of $1,850.

These are the allegations of the complaint, and there was sufficient evidence upon which the jury based its verdict. Like the question of agency, it was a question of fact, and a finding by the jury either way would have been conclusive.

Appellant insists that the instructions requested by him and refused by the court should have been given, but we think the court properly instructed the jury, and that it is unnecessary to set out at length the instructions given by the court or those requested by the defendant. What we have said about the manner in which agency may be established answers the argument with refer-

ence to defendant's first objection to the first instruction given by the court.

Defendant also contends that the instruction assumed that defendant made a secret profit. We do not think the instruction assumes that he made a profit, but it states to the jury that, whatever secret profits, if any, they find, etc., thereby leaving it to the jury to determine the question not only of agency but also as to whether there was a secret profit.

He also objects to the instruction because he says that he was entitled to represent both Cox and Bailey and entitled to a commission from each. There is no doubt but that he was entitled to represent anybody he wished and charge a commission for representing them, but the question here is whether he was representing the appellee, and whether he made a secret profit, and these questions were both submitted to the jury, and its verdict settles these questions against the appellant. It was not necessary to prove fraud in order to entitle plaintiff to recover in this case. It is the duty of an agent representing a principal to faithfully represent that principal and to be loyal and faithful to his interest, and he cannot acquire any interest for himself in opposition to the interest of his principal. And the fact that an agent acts gratuitously and without commission does not relieve him of liability for wrongful acts or negligence, whether they amount to fraud or not.

"Everyone, whether designated agent, trustee, servant, or what not, who is under contract or other legal obligation to represent or act for another in any particular business or line of business, or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common-sense and honesty, as well as of law. The agent is not entitled to avail himself of any advantage that his position may give him to profit beyond the agreed compensation for his services. He may not speculate for his gain in the sub-

ject-matter of the employment. He may not use any information that he may have acquired by reason of his employment, either for the purpose of acquiring property or doing any other act which is in opposition to his principal's interest." 21 R. C. L. 825.

We do not think the statement of the court, excluding from the consideration of the jury all elements of fraud except as the court instructed them, was prejudicial. As we have already said, it is not necessary to prove fraud, and the court so told the jury. The instructions of the court correctly submitted the questions in controversy to the jury, and the evidence was sufficient to support the verdict of the jury, and the case is therefore affirmed.