LANGSTON V. HARPER.

4-9112                     227 S. W. 2d. 973

Opinion delivered March 6, 1950.

*Jay W. Dickey,* for appellant.

*Bridges, Bridges, Young & Gregory,* for appellee.

HOLT, J. Appellee sued Nelson Langston, doing business as City Delivery Company, and J. T. Beavers, an employee of Langston, for personal and property damages resulting from a collision between one of Langston's trucks and appellee's automobile. A jury, in separate verdicts, awarded appellee $1,050 against each of the defendants. Appellant, Langston, has appealed from the judgment against him. There is no appeal by Beavers.

For reversal, appellant challenges the sufficiency of the evidence to support the verdict. He argues that there was no evidence that J. T. Beavers was within the scope of his employment, or about his master's business, at the time of the mishap, or at the time of the collision between appellant's truck and appellee's automobile, but that in fact Beavers was on a mission of his own and

using appellant's truck without authority. There is no complaint as to the amount of the verdict, or as to the instructions.

The evidence on behalf of appellee, briefly stated, is to the following effect: Appellant was engaged in the truck delivery business in Pine Bluff, delivered mail to and from trains, and was engaged in other delivery business. He operated both day and night and his employees had no fixed hours, but continued to work until deliveries were completed. The mishap here involved occurred November 23, 1948, at about 5:30 a. m., a mile or so from Pine Bluff. J. T. Beavers, an employee of appellant, was driving appellant's truck at the time. Charles Easterling was the night driver and J. T. Beavers was his helper. Floyd Beavers was a day driver and a brother of J. T. Beavers. The truck here in question was being used for both day and night deliveries. J. T. Beavers and Floyd lived together in an apartment in Pine Bluff. There was evidence that the night driver on occasions, after completing his work, drove the truck to Floyd Beavers' apartment for his use as day driver. The extent of this practice was in dispute. Easterling testified: "We stopped taking the truck to Floyd after he (meaning appellant) told us to." Appellant admitted on cross-examination that the truck in question had been delivered to Floyd on "one or two mornings" but "I thought I had stopped it."

Walter Cook, on behalf of appellee, testified that shortly after the collision here in question, appellant said to him: "These night drivers, these employees, had been driving the truck over to the apartment where the day driver, Floyd Beavers, and J. T. Beavers lived," and that "they had been in the habit of doing that" and further: "A. Mr. Langston said that Mr. Easterling gave permission to Mr. Beavers, J. T. Beavers, to take the truck to Buck (Floyd) Beavers, the day driver who J. T. Beavers lived with."

The above testimony is in direct conflict with that offered by appellant.

Giving to this testimony its strongest probative force in favor of appellee and the jury's verdict, as we must, it presents a situation where the jury was warranted in finding that the truck in question, owned by appellant, was being driven by his employee, J. T. Beavers, Easterling's night helper, to the home of his brother, Floyd, for Floyd's use as a day driver, that appellant knew of this practice and that J. T. Beavers was within the scope of his employment when the truck he was driving negligently collided with appellee's automobile. J. T. Beavers did not testify in the case.

It is a well settled rule in this State that when it is shown that the automobile causing the damage belonged to the defendant and was operated at the time by an employee, as here, there is created a reasonable presumption that the employee, driver, was acting within the scope of his employment at the time of the collision. This presumption is rebuttable and may be overcome by the defendant and is a question for the jury to determine.

In *Casteel* v. *Yantis-Harper Tire Company,* 183 Ark. 912, 39 S. W. 2d 306, we again announced the rule in this language: "The doctrine is settled in this State that, if the automobile causing the accident belongs to the defendant, and is being operated at the time of the accident by one of the regular employees of the defendant, there is a reasonable inference that at such time he was acting within the scope of his employment and in the furtherance of his master's business. The inference or presumption of fact, however, may be rebutted or overcome by evidence adduced by the defendant during the trial. Where the evidence on this point is contradictory, the question is one for the jury. Where the facts are undisputed and uncontradicted, it becomes a question for the court. * * * But, as we have often said, the presumption arising which we are now considering is not one of law but of fact to be deduced from all the testimony, and the question as to whether it has, or has not, been overcome is equally a question for the jury." See, also, *Ford & Son Sanitary Co.* v. *Ransom,* 213 Ark. 390, 210 S. W. 2d 508, as to when this presumption may disappear.

As indicated, while the testimony is in sharp conflict, we are unable to say that there was no substantial evidence to warrant the jury's finding that at the time of the collision, J. T. Beavers, the truck driver, was about his master's business and driving appellant's truck.

Affirmed.