GREEN *v.* JONES-MURPHY PROPERTIES, INC.

5-2162 335 S. W. 2d 822

Opinion delivered June 6, 1960.

*Warren & Bullion,* for appellant.

*Cockrill, Laser & McGehee,* for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal by Walter Green, a real estate broker of Pulaski County, from a judgment entered against him in the Pulaski Circuit Court in the sum of $2,000. Jones-Murphy Properties, Inc., is an Arkansas corporation, whose principal stockholders and officers are Drs. Kenneth Jones and Horace Murphy, the corporation being principally engaged in purchasing properties for investment. Ten acres, belonging to Mrs. A. D. Taylor and the heirs of her deceased husband, were purchased by appellee through appellant. Appellee paid $15,000 for the tract, and subsequently learned that the Taylors only received $13,000. The $2,000, less closing expense, was retained by Green as his commission. Appellee contended that Green was acting as its agent, and had thus wrongfully retained the amount in excess of the selling price. Green contended that the amount was simply his commission on property which had been exclusively listed with him for sale by the Taylors, *i.e.,* he was an agent for the Taylors, rather than for appellee. Suit was instituted by the corporation for the $2,000 difference between the amount paid for the property by the company, and the amount received by the seller from the company, it being alleged that appellant wrongfully concealed the fact that he had entered into an agreement with Mrs. Taylor; that she had agreed to sell the property for $13,000, and that Green had made a personal profit of $2,000 in violation of his fiduciary relationship with appellee. On trial, the jury returned a verdict for appellee. Judgment was entered in accordance with the verdict, and from such judgment comes this appeal. For reversal, appellant

contends that there was no proof of employment of Green as an agent, and further avers that the court erred in giving its instruction number two.

Proof on the part of appellee was as follows: Dr. Jones testified that in early November of 1958, while on his way to Rotary Club, he passed the property owned by the Taylors, and observed a homemade sign, "10 acres for sale"; the witness and Dr. Murphy had discussed the purchase of land for long term investment, and this unimproved land interested him; he became acquainted with appellant in the Rotary Club, and asked Green if he was familiar with the property. Appellant informed Jones that he was familiar with it, and that the price was too high. Subsequently, Jones purchased another ten acres from Green and Mrs. Josephine Graham for $10,000. In the meantime, Jones learned from Mrs. Taylor's daughter that the Taylor property was still for sale. The evidence reflects, that sometime between the middle of November and the first of December, Jones called Green and informed him that he and Murphy were still interested in purchasing that property, and asked appellant to contact, in their behalf, the Taylor family, and see if the price "could not be brought down." According to the witness, Green agreed to do this. Jones considered that Green was working for appellee for the purpose of obtaining the best price possible for the Taylor property, The witness stated no mention was made relative to compensation, it being his thought that the fee for services would be discussed when the deal was closed. According to the Doctor, sometime between the 10th and 15th of December, Green advised him that he had talked with the Taylor family, and the property could not be purchased for less than $15,000. Appellant considered this a "good price". Relying upon the broker's judgment, Jones, on December 20th, in behalf of appellee, entered into an "offer and acceptance" agreement, which was signed in the following manner:

"10. This offer is binding upon Buyer if accepted within 2 days from date.

(Signed) Walter Green       Kenneth G. Jones, M.D.
      Agent                Buyer

The above offer is accepted this Dec. 20, 1958.

          (s) Mrs. A. D. Taylor
           Seller

         By W. Green, Agent
          Seller.''

In January, 1959, Green informed Jones there was a defect in the title to five of the ten acres; that they should go ahead and close the five acres without defect, but that the other five would have to go through guardianship proceedings. According to Jones, after some persuasion by Green, he agreed to this procedure. Appellant brought the papers and closing statement to his office for signing, though he did not read the papers in detail, and did not remember their contents. On January 31, 1959, sale of the five acres without title defect was consummated, and title conveyed to appellee; on the same date, unknown to appellee, a new contract for the sale of the remaining five acres was executed with signatures as follows:

"10. This offer is binding upon Buyer if accepted within ............ days from date.

*Walter Green*       Jones-Murphy Prop., Inc.
    Agent            *By Walter Green,*
               Buyer Agent

The above offer is accepted this Jan. 31, 1959.

         Jessie Taylor, Seller

         Jesse Taylor, agent for heirs of
         A. D. Taylor''

In the latter part of February or early March, Jones learned that the Taylor family had agreed to sell the property for $13,000, and he confronted Green with this fact.

Appellant testified that he had talked to Mrs. Taylor and her daughter about selling the property on several occasions prior to his discussions with Jones, but that he only obtained his exclusive listing contract on December 6, 1958. Admittedly, he did not tell Jones that he had the exclusive listing; likewise, he admitted that he did not place a sale sign on the property. The witness stated that he did not consider himself an agent for Jones, and had no reason to think that Jones regarded him as an agent; that the only contract he had was with Mrs. Taylor. Green testified that he had been out some expense in closing the transaction, and only realized $1,453 for his commission. Relative to obtaining the exclusive listing, Green testified:

"Mrs. Taylor not being versed in real estate, being the only piece of property she had owned, she asked me to give her a guaranteed net price on the property and me pay all the expenses. When I had talked to her about the property, I talked to her daughter first, and she told me she wanted eighteen thousand for the property. When I called at their home I asked her to bring her family in to my office and discuss the lowest possible price she would accept and after figuring the price I would have to sell it to the doctors for to get my 10% commission, she agreed to accept, she told me, she said, 'I have got to have $13,000 net to me. Anything you get above that, I don't care what you get.' I was acting as agent for Dr. Jones and Murphy, I mean agent for Mrs. Taylor to sell the property to Jones and Murphy because I had no written contract at all with Jones and Murphy prior to their making me an offer and acceptance contract. The only contract I had was with Mrs. Taylor, she wanted me to guarantee her $13,000, she didn't care who I sold it to."

He testified that he signed the January 31st agreement as agent of Jones-Murphy Properties as a matter of "convenience." On re-direct:

"I couldn't get Kenneth or Horace to come down. I had to take it to their office. At the suggestion of the insurance company and somebody at Pulaski Heights

Bank, they had already put all the money up, they felt like there ought to be another contract drawn and signed by Mrs. Taylor and Jones and Murphy, and it was merely a contract of convenience more than anything.''

On cross-examination, he testified:

''Q. Did you tell Dr. Jones you signed that contract?

A. No, he said whatever I saw fit to do.

Q. After signing that contract did you tell him you had signed it?

A. I told him everything was all right.

Q. Did you tell him about this?

A. I don't think I mentioned it.

Q. Did you furnish him a copy of it?

A. I don't know. Everything was left up to me. I would call him maybe three days before I would hear from him.''

Under appellant's primary contention of error, we are only concerned with whether there was sufficient evidence to support the verdict of the jury. *Walthour* v. *Pratt,* 173 Ark. 617, 292 S. W. 1017 (1927), is a case very similar to the one at bar. As here, the broker was instructed by the buyer to ascertain the amount that the owner of certain lots would accept for purchase, and there was no written agreement, or express oral agreement, that the broker would serve as agent for the buyer of the lots. On judgment being rendered against Walthour, he appealed to this Court, and in affirming the trial court's judgment, this Court held the contention to be without merit, stating:

''The appellant earnestly contends that there is no evidence to show that he was the agent of appellee, and that, for that reason, the court should have directed a verdict in his favor. As to whether he was the agent of Mrs. Pratt is a question of fact properly submitted to the jury, and, under the facts as developed in this case,

the jury might have found either way. They might have found that there was no agency. They however found that the agency did exist, and there is some substantial evidence to support this finding, and their finding of this fact is binding on this court.

It has been held many times that the findings of a jury on questions of fact, where there was any substantial evidence to support it, could not be disturbed by this court. It is not necessary, in order to establish agency, that the evidence show any express agreement.

'It is not essential that any actual contract should subsist between the parties or that compensation should be expected by the agent; and while the relation, in its full sense, invariably arises out of a contract between the parties, yet the contract may be either express or implied. * * * Whatever evidence has a tendency to prove an agency is admissible, even though it be not full and satisfactory, and it is the province of the jury to pass upon it. Direct evidence is not indispensable — indeed, frequently is not available — but, instead, circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject-matter of the contract.' 21 R. C. L. 819-820. * * *

In the case at bar the evidence tends to show that the appellee requested appellant to see the owner of the lots, and appellees testify that the appellant told them it was Mr. Cox; that an offer of $1,850 was made; that afterwards appellant told appellee the offer had been accepted, a contract was signed, and afterwards deeds were executed and money paid. Tipton Cox testified that, when Walthour came to him or talked to him, he understood that Pratt was purchasing the lots, or that Pratt was the one making the offer, and that he was to make the deed to Bailey because some financing was to be done. * * *

. . . we think there was substantial evidence from which the jury might have found that the appellant was the appellee's agent, and, while acting as her agent, pur-

chased the property from Mr. Cox for $1,500, and had the deed made to Bailey and then conveyed to appellee for $1,850.''

In the case at bar, there was evidence that Jones requested Green to talk to the Taylors about the lots before Green obtained the exclusive listing contract, and that Green agreed to do this; no indication was given by appellant that he had obtained the exclusive listing contract from the Taylors, nor did he tell Jones the net price to Mrs. Taylor; Green never placed his own sign on the property, and in fact, the evidence reflected that the old homemade sign remained on the premises. Appellant admitted that in his discussion with the Taylor family, Mrs. Taylor agreed to the listing after he figured the price that the property would have to be sold for, in order for him to obtain the desired commission. Green likewise admitted that he had appellee in mind at the time as the sale prospect, and of course, the signing of the offer and acceptance agreement on January 31st by Green as agent of Jones-Murphy was rather potent evidence. Counsel for appellant point out in their brief, that Green also signed as agent for Mrs. Taylor, but we are not concerned with other possible agency relationships held by Green. As was stated in the *Walthour* case:

''He also objects to the instruction because he says that he was entitled to represent both Cox and Bailey and entitled to a commission from each. There is no doubt but that he was entitled to represent anybody he wished and charge a commission for representing them, but the question here is whether he was representing the appellee, and whether he made a secret profit, and these questions were both submitted to the jury, and its verdict settles these questions against the appellant. It was not necessary to prove fraud in order to entitle plaintiff to recover in this case. It is the duty of an agent representing a principal to faithfully represent that principal and to be loyal and faithful to his interest, and he cannot acquire any interest for himself in opposition to the interest of his principal. And the fact that an

agent acts gratuitously and without commission does not relieve him of liability for wrongful acts or negligence, whether they amount to fraud or not.''

We conclude that there was sufficient evidence to support the verdict of the jury that Green was the agent of appellee.

Appellant contends that the court's instruction No. 2 was erroneous, in that it permitted the jury to find that there was an agency, even though Green did not understand that he was being looked upon as an agent, and no specific contract had been entered into. We think that the *Walthour* case, heretofore quoted, answers this contention. Likewise, in 2 American Jurisprudence, § 24, pages 26 and 27:

''Whether an agency has in fact been created is to be determined by the relations of the parties as they exist under their agreements or acts. If relations exist which will constitute an agency, it will be an agency whether the parties understood the exact nature of the relation or not.   *   *   *   If an act done by one person in behalf of another is in its essential nature one of agency, the former is the agent of the latter, notwithstanding he is not so called.''

At any rate, no specific defect in the instruction was called to the trial court's attention, a general objection only being made. Unless, therefore, the instruction was inherently erroneous, the general objection was not sufficient. This instruction was not inherently erroneous, and in fact, appellant admits that, under some circumstances, the instruction would be a proper statement of the law. The contention is without merit.

No reversible error appearing, the judgment is affirmed.