WALTER GREEN *v.* FRED PICKENS, ADM'R, ET AL

5-5675                                            473 S.W. 2d 862

Opinion delivered December 20, 1971

*Martin, Dodds, Kidd, Hendricks & Ryan,* for appellant.

*Pickens, Pickens & Boyce* and *Smith, Williams, Friday, Eldredge & Clark* by: *Fred M. Pickens, Jr., Herschel H. Friday* and *Michael G. Thompson,* for appellees.

CONLEY BYRD, Justice. Appellant Walter Green, a licensed real estate broker, brought this action against appellees Fred Pickens, administrator of the ancillary estate of T. A. Hester, deceased, M. W. Staples, Josephine Graham, T. H. Brown, K. N. Jones and T. A. Hester, Inc., to collect commissions and assert his rights as a joint venturer into three separate parcels of property. For convenience the properties will hereinafter be referred to as the (1) T. A. Hester and M. W. Staples, trustees, property, (2) T. A. Hester, Inc., property and (3) M. W. Staples and K. N. Jones, trustee, property. The Chancellor denied him the relief prayed and

entered judgments on appellees' counterclaims for commissions and secret profits obtained. For reversal appellant contends:

"I. The Court erred in excluding the testimony of Eugene Warren, attorney at law, on the basis of a privileged communication between Mr. Warren as attorney and Mr. T. A. Hester as a client.

II. The Court erred in invoking the 'dead man's statute' preventing the appellant from testifying as to an oral agreement he had with T. A. Hester.

III. The Court erred in excluding that part of appellant's testimony relating to his oral agreement with T. A. Hester, now deceased, on the grounds that such statements constituted hearsay.

IV. The Court erred in holding that enforcement of an oral agreement between appellant and T. A. Hester is barred by the Statute of Frauds.

V. The Court erred in holding that appellant's claims were barred by the Statute of Limitations.

VI. The Court erred in dismissing appellant's petition against M. W. Staples and K. M. Jones, trustees, with respect to the Pleasant Hills property.

VII. The Court erred in holding that appellant was guilty of misusing appellees' funds.

VIII. Trial Court erred in its interpretation of Swindle v. Swindle."

The first witness called by appellant was Eugene Warren, an attorney who had consulted jointly with appellant and T. A. Hester before any of the properties were purchased. The Chancellor erroneously excluded his testimony under the attorney client privilege. *Morgan* v. *Wells,* 242 Ark. 499, 415 S. W. 2d 223 (1967) and *Laster* v. *Oldham,* 189 Ark. 5, 69 S. W. 2d 1078 (1934). However, as suggested in *Swindle* v. *Swindle,* 242 Ark. 790, 415 S. W. 2d 564 (1967), the trial court caused appellant to

proffer the testimony through an interrogation of the witness. Thus for purposes of this appeal and because of the disposition herein made, we are treating Mr. Warren's testimony as uncontradicted even though appellees did not cross examine.

Without deciding the issues raised as to the "dead man's statute", hearsay, statute of limitations and statute of frauds, for purposes of disposing of the issues here we are treating the record as if all of the Chancellor's rulings thereto were erroneous. We point out that the proffers of the evidence were made and are available in the record for review purposes.

Mr. Warren testified that in late 1962 or early 1963, Hester and Green came into his office. Green advised him that he and Hester had entered into an agreement whereby Mr. Green was to purchase property in the western part of Little Rock in Pulaski County for Hester and his associates upon a price agreed to by Hester. The conditions that Hester had placed in the agreement caused Green some anxiety because of the litigation which Green had had in the case of *Green v. Jones-Murphy Properties Inc.*, 232 Ark. 320, 335 S. W. 2d 822 (1960). According to Warren's understanding of the agreement, Hester insisted that Green was to receive the standard real estate commission for the purchase of the property and was to obtain all he could of that from the seller. It was Warren's understanding that, in addition, Green was to be caretaker of the property, was not to obligate Hester or his associates without their prior approval, and Green was to have the right to sell the property and to receive the standard real estate commission.

THE HESTER—STAPLES TRUSTEE PROPERTIES: In his petition, Green, with reference to these tracts, alleged that he had entered into a joint venture whereby T. A. Hester and M. W. Staples, trustees, would furnish the money and Green would seek and find real estate to purchase. For his efforts, Green would partic-

ipate in the joint venture to the extent of 10 % of the purchase price, would manage the properties through to an ultimate sale for profit and would then participate in such sales to the extent of ten percent of the sales price. Pursuant to this plan he bought the Hickey tract for $225,000 and for his efforts was paid $5,062.50 leaving a balance owing him of $17,437.50; pursuant to such agreement he obtained the Collins tract for $200,000 and was paid compensation or fees in the amount of $19,-696.00 leaving a balance due of $204.00; pursuant to such agreement he acquired the Wilson tract for $20,000 and was paid $2,000; and that pursuant to the same agreement he purchased the Johnson tract for $136,000 and was paid $13,600 for his efforts. On direct examination Green testified substantially as alleged and that this agreement had been breached. On cross-examination it developed Green had not purchased the Collins tract for $200,000 but that in fact he had purchased the same for $188,800 and obtained $8,496.000 commission from the seller. He also admitted that he had received $200,000 from Hester, Staples and Josephine Graham. Green testified that he purchased the Wilson tract for $22,000, the amount he had collected from Hester, Staples and Graham, but his offer and acceptance showed a purchase price of $20,000. Having alleged and testified to a purchase price of $136,000 for the Johnson tract and the collection of a commission of $13,600, it developed on cross-examination that the tract, according to Green's own records, had been purchased for $122,000 and that from Hester, Staples and Graham he had received checks totalling $136,000.

T. A. HESTER, INC., PROPERTIES: The allegation of Green here and his testimony on direct were that he had a joint venture agreement whereby T. A. Hester, Inc., was to supply $300,000 to purchase real property. According to the agreement, T. A. Hester, Inc., was first to receive 6% interest on its investment, Green was next to receive 6% commission and one half of any profits remaining. Pursuant to such agreement Green testified that he purchased seven tracts of land as follows:

| | |
|---|---|
| Cooper tract | $ 8,500.00 |
| Kanis Road tract | 16,000.00 |
| Boydston tract | 42,200.00 |
| Rush tract | 13,500.00 |
| Downie tract | 18,000.00 |
| Asher Road tract | 10,000.00 |
| Reusser tract | 78,500.00 |

Defendants' exhibit No. 21, the closing agent's settlement sheet, shows a purchase price of $8,500 for the Cooper tract from which were deducted $50.00 for an attorney's opinion and $350.00 for an appraisal fee. Defendants' Exhibit No. 42 is T. A. Hester, Inc's., settlement sheet with Green after the Cooper tract was sold. The latter exhibit shows that the settlement was based upon a purchase price of $8,500 in accordance with Green's alleged agreement. On cross-examination it developed that Green in his deposition prior to trial had admitted receiving the fee and had described the $350 appraisal fee as a loan owed to him by Cooper. At trial he described the $350 as an appraisal fee. Admittedly there was nothing in the closing statement to show the purchasers that Green received the fee. Neither was the fee calculated as a fee or commission paid to Green in the settlement sheet from T. A. Hester, Inc. Paul Cooper testified that he neither authorized an appraisal by Green nor had any need for such an appraisal. That Cooper did not need an attorney's opinion is obvious.

Another typical example of Green's conduct involves the Boydston tract. According to Green the purchase price was $42,200. The closing statement prepared for the purchaser showed a purchase price of $42,200.00 with no deduction of a commission. The closing statement prepared for the seller, G. C. Boydston, showed a sales price of $37,950 with a deduction of $3,795 for a commission. Defendants' exhibit No. 29 shows a disbursement to Green for a commission of $4,250 on the same legal description. Defendants' exhibit No. 25 is an offer and acceptance agreement to "Glenn Johnson Real Estate Agent" from "Walter Green Agent" to purchase the 30.36 acres for $1,100 per acre under an agreement by Boydston to pay a ten percent commission to Glenn

Johnson, Jr. Green at one time testified that he purchased the land for himself and that Mr. Hester agreed to the price of $42,198 by telephone. At another place in the record he says that he was acting as agent for both himself and T. A. Hester, Inc.

THE STAPLES—JONES PROPERTIES: Appellant's allegation is that on or about March 1, 1967, he entered into an agreement with M. W. Staples and K. M. Jones, trustees, for the purchase of lands to be resold exclusively by Green and that upon such sale Staples and Jones were to receive 6% interest on their investments and the profits were to be divided one third to Green and two-thirds to Staples and Jones. Green testified that no commission was to be paid at time of purchase. Pursuant to this arrangement Green transferred to Staples and Jones, trustees, property owned by Pleasant Hills Inc., a corporation he solely owned, for $255,000, and also purchased property described as the Walton tract for $5,000 net to the seller. Green testified that he acted as agent for Staples and Jones in the purchase of the tract and that they paid him a commission. The record shows that the offer and acceptance in Green's files on the Walton tract was made to "Walter Green Realty Agent" from "M. W. Staples by Walter Green Agent" and that no fee was to be paid by seller. Green received from Staples a check for $5,593.60 and mailed to Staples a seller's closing statement showing a purchase price of $5,500 and the payment of a $500 commission to the unnamed agent making the sale. He also testified that Staples knew that he got the $500 commission. However the record does not show that Staples was furnished a copy of the offer and acceptance.

Counsel, throughout the cross-examination of Green, often found it necessary to apply to the court to compel direct answers to questions. Needless to say, Green's testimony is so evasive and conflicting that it is entitled to little if any credibility.

When we give full credence to Mr. Warren's testimony and T. A. Hester, Inc.'s, settlement sheet on the Cooper tract, it at once becomes obvious that in each

agreement Green's position depended on the faithful performance of the duties of a broker. In that relationship he was at all times required to make a full disclosure to his principals and not withhold any valuable information. See *Felhauer* v. *Milam,* 159 Ark. 178, 251 S. W. 379 (1923) and *Taylor* v. *Godbold,* 76 Ark. 395, 88 S. W. 959 (1905). A failure to make a full disclosure forfeits all right to compensation and renders the broker liable for any profits. *Green* v. *Jones-Murphy Properties, Inc., supra.* The rule is set forth in *Taylor* v. *Godbold* in this language:

> " 'Like other agents in whom trust and confidence are reposed, the broker owes to his principal the utmost good faith and loyalty to his interests.*** It is his duty, therefore, to fully and freely disclose to his principal at all times the fact of any interest of his own or of another client which may be antagonistic to the interests of his principal, and he will not be permitted to take advantage of the situation to make gain for himself by forestalling or undermining his principal.' "

It is obvious from the record that appellant failed in numerous instances to make full disclosure to appellees. For this reason the judgment is affirmed. We find it unnecessary to determine the correctness or incorrectness of the other alleged errors.

Affirmed.