James E. FENNELL, et ux *v.* Billy J. ROSS

85-178                                                          711 S.W.2d 793

Supreme Court of Arkansas
Opinion delivered June 30, 1986
[Rehearing denied September 15, 1986.]

*Hartenstein, Lassiter & Oberlag*, by: *Ray Hartenstein*, for appellants.

*Ralph M. Cloer, Jr.*, for appellees.

DAVID NEWBERN, Justice. This is an appeal from a judgment awarding the appellees, the Rosses, who were the sellers, damages for breach of a real estate sale contract against the appellants, the Fennells, who were the buyers. The Fennells answered, contending they had properly rescinded the contract, and they filed a separate counterclaim seeking restitution in the sum of the earnest money they had paid. The basis of the rescission asserted by the Fennells was that the Rosses had misrepresented the property, through their listing broker, in the multiple listing service (MLS) publication by advertising that the property had "Commercial Potential! Any type business!" In fact, the property was zoned residential and was in the one hundred year flood plain. The court held that the fact that the land was in the flood plain was material, presumably because it, in large measure, negated the commercial potential of the property. However, because that fact was known to the agent who showed and sold the property to the Fennells, and because the court deemed her to be the agent of the Fennells, rather than the sellers, the Rosses, he held the Rosses were entitled to damages for the Fennells' failure to perform. In other words, the court found the Fennells' attempted rescission of the contract was not effective because their agent's knowledge, imputed to them, negated their claim of reliance on the misrepresentation that the property had commercial potential. We disagree with the trial court's holding that the selling agent was the agent of the buyers, and thus we reverse and remand.

Dr. Fennell and his wife were looking for property where they could reside and he could have room to conduct his veterinary medicine practice. Mrs. Whiteman, a real estate agent working for Rainey Realty Co., had been working with the Fennells for months, trying to find such a place. In the MLS publication she noticed a listing for a dwelling on Stagecoach Road in Little Rock described, in part, as follows: "Commercial Potential! Any Type business!" The property had been listed by Century 21 Reddick Company. Mrs. Whiteman showed the

property to the Fennells and assured them they would have no trouble getting the zoning changed from residential to a satisfactory commercial classification to accommodate Dr. Fennell's clinic. After the Fennells and the Rosses executed an offer and acceptance, the Fennells were told by a city planning office employee that the property was in the "100 year flood plain" and that because of that fact, rezoning would be very difficult to obtain. The testimony of Richard Wood, a supervisor in the City of Little Rock planning office confirmed that conclusion. Upon learning of this obstacle caused by the property's location in the flood plain, the Fennells refused to go through with the contract.

In a letter to counsel after post trial briefs and preceding the entry of judgment, the judge said:

> The Court has now received and is appreciative of your excellent briefs; however, those authorities found in those briefs failed to answer with finality the question of whose agent Mrs. Whiteman was. The mention of that failure should not be received as a criticism of either brief. To the contrary, the Court is of the conviction that our Appellate Courts have not been called upon to decide that issue; therefore, to assign you the task of finding such authority was requesting the impossible.
>
> The Court would find that the testimony by and about Mr. Wood and his attitude toward securing a suitable rezoning of the property which was the subject of the sale to be of no significance. Which is to say, a purchaser of property would have no right to rely upon a statement by a real estate agent concerning whether or not the property would find a favorable or unfavorable zoning classification by the city on application to that city seeking rezoning. Further, the mere fact that the city would resist a zoning change does not mean that a zoning change would not follow the applicant's efforts upon a showing of justification.
>
> The Court, however, is of the conviction that the fact that city property is classified as being in a flood plain and by that very fact there are imposed restrictions upon the use and development of that property is a fact material to the value of that property. By restrictions here the Court intends to describe restrictions imposed by governmental

authorities, for a view of the terrain itself should alert any purchaser of property that the property lies in an area which is apt to be affected by heavy rains. Thus restriction to development and use of the property arising from that fact is not an item that is required to be disclosed. Which is to say, a purchaser should be aware or alerted to the point of inquiry.

It would seem to the Court that here the critical facts are:

1. The purchasers of the property were aware or should have been aware that this property was subject to flooding; however, at the time of purchase they were not aware that the land's use and development was affected by governmental restrictions by reason of the lands having been formally declared to be in the flood plain.

2. The fact that the lands are situated in a formally described flood plain is a fact material to the bargain and a fact that should be disclosed to an innocent party.

3. Mrs. Whiteman is a person who either had knowledge of the "flood plain problem" or is deemed to have such knowledge.

4. Mrs. Whiteman is the agent of the purchasers in the situation found in this record. She had been working with these purchasers for some period of time in an effort to find the type of property they were seeking.

5. The sellers here are entitled to their bargain.

The ensuing judgment contained the five numbered conclusions from the court's letter.

We have no quarrel with any of the court's factual determinations, but they were not the crux of the decision. The court obviously, and we think correctly, regarded the question of whether Mrs. Whiteman was the agent of the sellers or of the buyers as one of law. That is the question his decision turned upon, and it is thus the one we must address. Here we are dealing with a garden variety MLS property sale transaction conducted by two real estate brokers through their agents. Obviously, the broker and agent who listed the property with MLS was the representative of the sellers, but what of the others, the selling

broker and its agent who brought the buyers' attention to the property? A good statement of the problem is as follows:

> In many real estate transactions, there are two brokers involved. One of the brokers is the "listing broker" and the other broker is the "selling broker." When this is the case, the agency relationship is usually established between the seller and the listing agent through the listing contract, an agreement that acts as an employment contract for the listing agent. An agency relationship between the seller and the selling broker is often created by express language in the listing agreement. The clause that creates this agency relationship expressly authorizes or requires the listing agent to utilize the services of other brokers as subagents. Therefore, any broker who is not the listing broker but is attempting to effect a sale of the property in cooperation with the listing agent is considered a subagent. Consequently, when the listing contract contains such a provision, the selling broker has the duties of agency imposed upon him as a subagent of the listing broker. In essence, the selling broker, as subagent, is the agent of the seller. This subagency relationship with the seller, which generally precludes an agency relationship with the buyer, seems to be ignored by, if not unknown to, many selling agents. In addition, most buyers are probably unaware of its existence much less its legal ramifications. In practice, if the selling broker ever meets the seller, it is usually either when showing the property to a prospective purchaser or upon presentation of a purchase offer to the seller. However, the selling broker's relationship with the buyer is quite different. Often, the broker has been in the company of the purchaser for many hours and has conducted some fairly confidential interviews with the prospective purchaser. Given such extensive contact with the buyer, and such minimal contact with the seller, the buyer is justified in believing that the agent will do his best to obtain the property for the buyer at the lowest possible price and on the most advantageous terms. Of course, for the agent to attempt to do so is a violation of the agent's duty to the seller. However, it would be unrealistic to expect the buyer to feel that a broker who has worked with him extensively is

attempting to obtain the highest possible price for the seller, which, in actuality, is the agent's duty. [Footnotes omitted]

Romero, *Theories of Real Estate Broker Liability: Arizona's Emerging Malpractice Doctrine*, 20 Ariz. L. Rev. 767, at 771-773 (1978).

We have not previously decided this issue, and there is a dearth of authority from other jurisdictions. A California court has held the selling agent in these circumstances is the agent of the sellers. *Kruse* v. *Miller*, 143 Cal. App. 2d 656, 300 P.2d 855 (1956.) Most scholarly articles, in addition to the one quoted above, reach that conclusion also. *See, e.g.*, D. Burke, *Law of Real Estate Brokers*, § 1.5, pp. 9-10 (1982); J. Sinclair, *The Duty of the Broker to Purchasers and Prospective Purchasers of Real Property in Illinois*, 69 Ill. B.J. 263, 265 (1981). One reported trial court decision reached the opposite result. *Wise* v. *Dawson*, 353 A.2d 207 (Del. Super. 1975). Recognizing the magnitude of the problem in terms of the frequency with which it arises, one author has suggested the problem could be solved by giving the selling broker a dual fiduciary responsibility. *Comment*, 18 Wayne L. Rev. 1342 (1972). That suggestion was soundly criticized as one which might create more problems than it would solve. 20 Ariz. L. Rev. 767, *supra*, p. 773, n. 33.

The law of agency contemplates that an agent may serve only one principal with respect to any one transaction. *See* Rest. Agency (Second) §§ 387, 391, 394 (1957). We agree with the authorities and authors cited above who have reached the conclusion that in an MLS transaction like this one the selling agent is a subagent of the sellers.

Reversed and remanded for a new trial.

Special Justice ELLEN BRANTLEY, concurs.

HAYS, J., dissents.

PURTLE, J., not participating.

ELLEN B. BRANTLEY, Special Justice, concurring. While I, too, would reverse the trial court's decision and remand for trial on the Fennells' claim for restitution, I would do so on different grounds. I do not believe it necessary to decide whether Mrs.

Whiteman was the Fennells' agent. The majority may well be correct in its conclusion that, under the circumstances of this case, Mrs. Whiteman is properly considered a sub-agent of the Rosses. However, agency issues in the Multiple Listing Service conflict can arise in many different ways, and the resolution of those issues raises many complex problems. See, e.g., Burke, *Law of Real Estate Brokers*, § 1.5, pp. 9-10 (1982); Comment, *A Reexamination of the Real Estate Broker-Buyer-Seller Relationship*, 18 Wayne L. Rev. 1350 (1972). Since I would reverse the case even if I accepted the trial court's finding on agency, I do not believe the case should turn on that issue.

The case involves a material misrepresentation of fact in the sale of property. The misrepresentation about whether the property was located in the flood plain concededly began with the Rosses. The failure of Mrs. Whiteman (and Mrs. Reddick) to independently discover that the property was so located, even if they could have done so by the exercise of reasonable care, should not allow the Rosses to profit by their own misrepresentation. A contract may be rescinded if there was a mutual mistake of material fact. *Foster* v. *Dierks Lmbr. & Coal Co.*, 175 Ark. 73, 298 S.W. 495 (1927). *Hubbard* v. *Elam*, 238 Ark. 976, 385 S.W.2d 925 (1965). Precisely such a mutual mistake occurred here, and the trial court erred in refusing rescission.

STEELE HAYS, Justice, dissenting. Whether the Multiple Listing Service has altered the traditional concepts of agency in real estate transactions, I have not attempted to fathom. The trial court did not rely on it, though the majority sees it as the basis for the conclusion that Mrs. Whiteman was the seller's agent as a matter of law, a view I believe is incorrect.

Nor do I think the claim of the sellers that the property had "Commercial Potential—Any Type Business" to have been a material misrepresentation in this case, even taking into account the floodplain issue. It is undisputed the buyers were told the property had flooded, that water had entered the house and damaged the carpets. There was no proof the claim of "commercial potential" was intended by the sellers, nor taken by the buyers, to mean anything other than what the phrase implies—*potentially* usable as commercial property. There was no guarantee of commercial zoning, just as there was no proof that

rezoning was an impossibility. Richard Wood of the planning department testified rezoning would have been difficult but not impossible. The buyers could have conditioned their offer on rezoning but they chose not to. As they did not even attempt to obtain a zoning change, for all intents and purposes the zoning issue is moot. The evident fact is these buyers simply changed their mind soon after signing the offer and acceptance agreement. The agreement was signed on October 7, 1983 and on October 12 the buyers gave notice they were not going through with the purchase. There was substantial evidence that Mrs. Fennell did not like the property and did not want to buy it.

Regardless of how any other issues in this case are decided, the issue that concerns me is the majority's treatment of the agency problem. Few areas of the law of agency present problems as complex as in real estate transactions. Whether an individual is the agent of the buyer or of the seller is rarely static, it may depend on the particular function being performed. The "agent" may be an agent of the principal in one capacity though not in another. *Walker* v. *Huckabee*, 10 Ark. App. 165, 661 S.W.2d 460 (1983). In some respects real estate agents owe a duty to both buyers and sellers and do not fit neatly into a category readily applicable to all situations. *Little* v. *Rohner*, 707 P.2d 1015 (Col. App. 1985). And in a dual capacity, each principal is protected from a disloyal agent by general principles of agency and partnership. See 4 ALR 3d 224, Dual agent—Notice to principal.

I believe it is a mistake for this court to hold as a matter of law that Mrs. Whiteman was the agent of the sellers and it is clear the trial court did not treat it as a question of law. The existence of an agency relationship is a question of fact, as countless cases here and elsewhere have held. *Hawthorne* v. *Davis*, 268 Ark. 131, 594 S.W.2d 844 (1980); *Bell Transportation Co.* v. *Morehead*, 246 Ark. 170, 437 S.W.2d 234 (1969); *Campbell* v. *Bastian*, 236 Ark. 205, 365 S.W.2d 249 (1963); *Curtis Circulation Co.* v. *Henderson*, 232 Ark. 1029, 342 S.W.2d 89 (1961); *Green* v. *Jones-Murphy Properties, Inc.* 232 Ark. 320, 335 S.W.2d 822 (1960); *Langston* v. *Harper*, 216 Ark. 778, 227 S.W.2d 973 (1950); *Ford & Son Sanitary Co.* v. *Ransom*, 213 Ark. 390, 210 S.W.2d 508 (1948); *Walthour* v. *Pratt*, 173 Ark. 617, 292 S.W. 1017 (1927); *Bell* v. *State*, 93 Ark. 600, 125 S.W. 1020 (1910).

It has been said the ultimate question in agency is determining the intention of the parties. *Green* v. *Jones-Murphy Properties, Inc., supra*, AmJur2d, Vol. 3, p. 525, § 21. That being so, how can it be said Mrs. Whiteman was the agent of the sellers as a matter of law? For more than a year she had been employed by the buyers to search for the type of property they wanted. She considered herself the buyers' agent and Mr. Fennell testified unequivocally that he regarded Mrs. Whiteman as their agent. Mrs. Whiteman signed the offer and acceptance agreement on a line designating her as the buyers' agent. Finally, the trial court, sitting as fact finder, found her to be the buyers' agent. How she was to be paid is not revealed in the record, but even if she were to be paid from the proceeds of a purchase, that is simply one element to be considered in determining her status; it is not *controlling. Terry Dairy Co.* v. *Parker*, 144 Ark. 401, 223 S.W. 6 (1920); Corpus Juris Secundum, Vol. 2A, p. 608, § 40.

There may be something to be gained by declaring that agents involved in Multiple Listing Service contracts are the agents of the sellers as a matter of law, but I suspect there will be cases where we will not be entirely comfortable with so categorical a rule. For example, see *Little* v. *Rohner, supra*, where the equities and sound logic dictated the listing broker was the agent of the buyer for a particular part of the transaction. Had it previously been settled as a matter of law that the listing broker was the seller's agent, the court would have been precluded from reaching a just result.

The trial court's findings in this case have not been shown to be clearly erroneous and should be affirmed.